GARDNER, ADMINISTRATOR, APPELLANT, *v.* FIRST NATIONAL BANK OF BILLINGS, RESPONDENT.

POWERS—*Banks and Banking.*—Authority given to a bank by one who has borrowed money from it on certain notes, to apply deposits, thereafter to be made, upon such notes before their maturity at the option of the bank, is a naked power not coupled with an interest, and therefore cannot be exercised by the bank after notice of the death of the depositor.

BANKS AND BANKING—*Lien*—*Pleading.*—In an action against a bank to recover money of a depositor which has been applied by the bank upon the payment of certain notes, the defense of a banker's lien cannot be raised where such notes were not matured, and the defense was not made in the pleadings.

*Appeal from Seventh Judicial District, Yellowstone County.*

The cause was tried before MILBURN, J., upon an agreed statement of facts.   The defendant had judgment below.

Statement of facts, prepared by the judge delivering the opinion.

The case was tried upon an agreed statement of facts, which, with the admissions of the pleadings, are as follows : On August 18, 1887, J. W. Story and one Jackson made a joint note to respondent, the bank, for $1,000, and also a note with one Severance for $1,200 to the bank, each at sixty days.   That on these notes Story borrowed $2,200 from the bank.   That at the time of the loan, Story stated to the bank that he would send to them from time to time deposits to meet the notes, and instructed the bank that they might apply such deposits towards the payment of the notes, and that such deposits might be so applied before the maturity of the notes, if the bank desired.   The notes drew interest at one and one-fourth per cent per month.   The deposits drew none.   Story died September 12, 1887, and September 29th, plaintiff became the administrator of his estate. On the date of his death, September 12th, Story had on deposit with the bank $1,161.68, sent to the bank as aforesaid, and which had not been applied by the bank to the payment of the notes.   That prior to September 17, 1887, the bank had notice of Story's death.   That on that day the cashier of the bank, on a check signed for Story by himself, drew said money so on deposit, and applied the same to the payment of the said notes,

and this before the notes were due. On October 14, 1887, plaintiff, as administrator, demanded from the bank said money, which was refused. The pleadings in the case were filed after the notes became due. The bank has never presented said notes for allowance to the administrator. The plaintiff, administrator, sues the bank for $1,161.68, the amount of money on deposit with the bank at the death of his intestate. The defendant denies the indebtedness, and its defense is its application of the money upon the notes, in pursuance to the instructions of the deceased in his lifetime.

*W. A. Burleigh, John Tinkler,* and *M. J. Liddell,* for Appellant.

The defendant's cashier was appointed the agent of the deceased to make the applications of the deposits to the credit of the notes; but this duty was not to be exercised by him unless the defendant saw fit to do so. It appears that Mund, the cashier, with full knowledge of the death of the deceased, drew out by check, signed in Story's name, the funds on deposit after his agency or authority to act in that respect had entirely ceased. If, in order to carry out the application of the deposits to the credit of the notes, it becomes necessary to do it through the agency of Mund, the cashier, as the representative or agent of Story, then Mund's acts are null and void; for the death of his principal, upon reason and authority, terminated the agency or power conferred. As far as Mund is concerned it was not even an agency coupled with an interest. (Story on Agency, § 488; *Travers* v. *Crane,* 15 Cal. 12; *Ferris* v. *Irving,* 28 Cal. 645.) The bank knew of Mund's authority, for he was the agent of the bank, as well as the mandatary of the deceased, and the principle here applies, that the knowledge of the agent is the knowledge of the principal. The bank through its officers knew of Story's death, and therefore the defendant was bound to know and did know that Mund was without authority to draw a check and sign Story's name after his death in order that he might transfer the deposits of Story to the bank. (*Davidson* v. *Dallas,* 8 Cal. 247; *Mudgett* v. *Day,* 12 Cal. 139; *Blum* v. *Robertson,* 24 Cal. 128; *Templeton* v. *Poole,* 59 Cal. 286, 288; *Hayes* v. *Campbell,* 63 Cal. 143.) It was not optional with Mund, the cashier, to credit the notes with

the deposits; but this right was given only to the bank, and Mund was to make the transfer only in event the bank so elected. The bank not having done so up to the time of Story's death, the natural inference is that they did not wish to accept his offer. While the notes were drawing interest the deposits were not; hence we may conclude that the bank elected not to accept the offer during the lifetime of their debtor. In this respect the rule is, that, if the party making the offer die before it is accepted, or he to whom it is made die before he has given his assent, the representatives of neither party are bound nor can they bind the survivor. Story having died before the bank elected to accept his offer, there was no agreement of the two minds. This rule, we admit, would not apply had the bank not known of Story's death before it elected to have the cashier transfer the deposits.

We do not go into the question of counter-claim and set-off, for they cannot arise under the pleadings and the statement of facts. (Waterman on Set-off, § 667; 2 Story on Equity Jurisprudence, p. 660, § 1436, n. 1; *Brannan* v. *Paty*, 58 Cal. 330.) The defendant is in this attitude; it admits the amount on deposit to the credit of the deceased at the time of his death, but claims that the money was paid by Mund, their cashier, as the agent of the deceased, on an individual note and not a joint note as shown in the statement of the deceased, and after his death. The proof must sustain this special defense; and we respectfully submit that it does not. Even if this were pleaded as set-off or counter-claim the variance between proof and allegations would be fatal. (Waterman on Set-off, § 646, p. 639.)

*O. F. Goddard,* for Respondent.

The defendant bank, or its cashier, had a right to apply the funds of Story to the payment of his unmatured notes even after the death of Story, for if Story authorized the cashier to apply money, placed in defendant's bank, to the payment of his notes during his lifetime, the agency did not terminate by the death of Story, for the agency between Story and the bank was coupled with an interest of the agent in the subject-matter. The bank, having a direct interest in the subject-matter of the agency, had a right to execute the power given it by Story after

his death.  (Mechem on Agency, §§ 241, 243.)  The statement of facts and the allegations of the answer show that this money on deposit in defendant's bank was what the authorities call a specific deposit; that is, it was placed there for a specific purpose, viz., to be applied toward the payment of these notes of Story.  If Story in his lifetime had made demand upon the bank for this money it could not be contended that the bank would have been required to pay it over, for confessedly the money did not belong to Story, but to the bank whenever it saw fit to appropriate it and apply it to the payment of Story's debt.  If Story could not have recovered the money during his lifetime, then his administrator cannot.

The money in the bank to the credit of Story was a *specific* deposit, as contradistinguished from a *general* or *special* deposit, and was to be so treated by the bank and its officers.

A deposit will be treated as general, unless expressly made otherwise; but when a deposit is made for a specific purpose, to pay a certain check, draft, or note, and the bank is instructed to so apply it, the instructions must be carried out.  This subject is exhaustively treated and thoroughly analyzed by Mr. Morse in his work on Banks and Banking, sections 186–208, inclusive.

The theory of plaintiff as gathered from his complaint, that the account of Story was a *general* account, is exploded by the statement of facts, which would clearly defeat the action.

We think the bank clearly had the right to retain the funds and apply them as it did under the express agreement; but even if it had not, it had a lien upon the funds in its hands for the payment of any debt the deceased owed it, and could have withheld the funds to satisfy it.  (Morse on Banks and Banking, §§ 324, 325, 329.)

DE WITT, J. — In the lifetime of the deceased, J. W. Story, he gave the bank authority to apply his deposits to the payment of the notes, and before maturity, if the bank so desired.  This was the creation of an agency, or a power of attorney, a power which was never exercised during the life of Story, or prior to the knowledge of the bank of Story's death.  After his death, and notice to the bank thereof, the power was exercised, or the

agency acted upon, and the deposits applied.   There is no question of consideration, or contract, or rights of innocent purchasers without notice, involved in the construction of the conduct of the bank in attempting to act under this agency, or power.   Nor was the power coupled with an interest.   The interest to be coupled with a power, which will cause the power to survive the death of its grantor, must be an interest or title in the thing, which interest or title is conveyed with the power, and not left to be conveyed afterwards, with the exercise of the power; it must pass with the power, and then vest in the grantee of the power.   (*Hunt* v. *Rousmanier's Adm'rs*, 8 Wheat. 174.)   Such is not the situation in the transaction under review. No title in the money vested in the bank with the passing to it of the power.   No title could be in the bank until the power was exercised.

The subject of powers coupled with an interest is one not free from difficulty; but, that the power under consideration was not coupled with such an interest as secured its vitality after Story's decease, is amply apparent upon a careful study of that luminous and convincing discussion of the subject by Chief Justice Marshall, in *Hunt* v. *Rousmanier's Adm'rs*, cited above, from which opinion our views herein are taken.   (See, also, *Houghtaling* v. *Marvin*, 7 Barb. 412; *Norton* v. *Whitehead*, 84 Cal. 263; 18 Am. St. Rep. 172; Story on Agency, §§ 488, 496; and Mechem on Agency, §§ 241–244, and the many cases cited in these text-books which we will not review.)

We hence conclude that the authority of the bank was a naked power to apply, or rather to elect to apply, the money to the notes.   The power was not exercised in the life of its creator, and perished with his death.   "This is an ancient and well settled doctrine of the common law."   (Story on Agency, § 488.   See, also, *Hunt* v. *Rousmanier's Adm'rs, supra*, and Story on Agency, §§ 349, 490, 491, 496, and generally, 467–500; Mechem on Agency, §§ 238–246, and Evans on Agency [Elwell's], p. 87, and numerous authorities cited in the text of these works.)

Counsel for respondent suggest in argument that the bank had a lien upon the deposit for the indebtedness on the notes. But that defense is not made in the pleadings, nor was the case

tried on that theory, and furthermore the indebtedness on the notes had not matured, for which a lien might be attempted to be set up, and this is not an action in equity to subject the money to a lien for unaccrued indebtedness. (*Wilson* v. *White,* 84 Cal. 239; Morse on Banks and Banking, § 329, and cases cited.) The action of the bank in applying these deposits was without authority. The money belongs to the estate of J. W. Story.

The judgment is reversed, and the case remanded to the District Court with directions to enter judgment in accordance with these views.

BLAKE, C. J., concurs.

Associate Justice HARWOOD, having been counsel in this case in the court below, takes no part in this decision.