Emeline Unruh *v.* Benjamin F. Lukens, Appellant.

*Deed—Deed of trust—Bill for reconveyance—Equity.*

On a bill in equity by an elderly woman to compel a reconveyance of property which she had deeded to her physician, a decree will be entered for plaintiff where the findings of the master, supported by competent evidence, show that the deed was not delivered to defendant, but had been retained by plaintiff's attorney; that the deed was signed without consideration; that plaintiff's attorney, who appeared to be also defendant's attorney, had assured plaintiff that she could revoke the deed at any time; that the effect of the deed was never properly explained to plaintiff; and that defendant was both physician and attorney in fact of plaintiff, had great influence with her, and had influenced her to make the deed.

*Costs in equity.*

In such case a court of equity should not impose a part of the costs upon the plaintiff.

Argued Jan. 25, 1895.  Appeal, No. 209, July T., 1894, by defendant, from decree of C. P. No. 2, Phila. Co., Dec. T., 1892, No. 957, on bill in equity.  Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Bill in equity for reconveyance.

The case was referred to G. Harry Davis, Esq., as master, who reported as follows:

"It appears from the testimony, that the complainant, Emeline Unruh, first met the defendant, Benjamin F. Lukens, in the spring of 1883, when he visited her professionally.  They did not meet thereafter until the nineteenth day of April, 1886, when he visited her as her physician, and took formal charge of her case.  From that time until the 1st of January, 1891, he was her physician, also acted for her in the capacity of agent, under a power of attorney, which gave him almost unlimited authority, and was the recognized messenger between herself and her attorneys at law.  During this period, according to his own testimony, he paid upwards of a thousand visits, and had charge of the greater part of her property.

" Complainant commenced proceedings in equity in the Court of Common Pleas No. 2, of the County of Philadelphia, to June Term, 1887, No. 972, against Bridget Nichols to recover back certain real estate. Just previous to the commencement of this suit, at the suggestion of the defendant, and by him, she was introduced to H. B. Amerling, Esq., an attorney at law, whose first professional business for her was the preparation of a will, in which defendant was a legatee in the sum of one thousand dollars. This was almost immediately after he had commenced to treat her as her physician. Shortly after Mr. Amerling had been retained as counsel, these proceedings were begun, and as associate counsel, Mr. Amerling had with him Edward Haugh, Esq., and W. W. Wiltbank, Esq. The case had been taken by counsel, as far as Messrs. Haugh and Amerling were concerned, on a contingent fee of one half the value of the property, should they succeed in recovering back the same. This suit terminated adversely to Miss Unruh. Shortly before its termination, as she alleges, upon the suggestion and by the advice of Dr. Lukens and for the purpose of covering up her property and preventing it being burdened by the costs of that suit, she gave to Dr. Lukens, and to one Catharine Brown, a friend of hers and a co-defendant in this bill, judgment notes for the sum of six thousand dollars each. She subsequently executed two mortgages for similar amounts and to the same parties. Subsequent to the mortgages, on the 6th of June, 1889, she executed a deed for all her real estate to Dr. Lukens and Mrs. Brown, and the judgments upon the notes, and the mortgages, theretofore given, were then satisfied of record. This deed, though absolute upon its face, was to all intents and purposes a trust deed, and according to the testimony of Dr. Lukens was made, ' with the knowledge and intention of retaining the use of these properties, and at any time she could have them re-deeded to her.' They were conveyed back to her by a deed made by Benjamin F. Lukens and wife and Catharine A. Brown, on Jan. 5, 1891, and on the same day, the deed, which is the subject of the present proceedings, and which is commonly known throughout as the ' trust deed,' was executed by the said Emeline Unruh and was duly recorded. Up to the date of this recited deed, Dr. Lukens had retained his position as physician and attorney in fact, for Miss Unruh. Thereafter he rendered

no services whatever. Miss Unruh, in speaking of these several transactions and deeds, says that Lukens told her that Wiltbank had said she had better give him, Lukens, the power of attorney, and that she had better have her property put out of her name during the pendency of the Nichols suit, and that it was to be put back in her name after the suit was over, and she speaks of the judgment notes and the mortgages as shams. She says 'they were made to save my property so they could not come on me when the suit was done.'

"She further says that there was no consideration for the conveyance, and that that written in the deeds was not true, and that she had never read it nor understood it. That she did not owe the doctor anything, not more than a hundred dollars at any rate.

"She further says that at the time of the execution of the deed, which is the subject of the present proceedings, the same was not read or explained to her, but she was informed by Mr. Bryant, who had by this time become her attorney, that she could change and revoke the same at her pleasure. In this she was, at least to some extent, corroborated by Catharine Brown. Dr. Lukens, on the contrary, testified that the deed was made to him, as compensation for his services, and that these services were the consideration therefor. Mr. Bryant testified that he fully explained the deed and its covenants to her, and that she had told him she wanted it so written that no one could interfere with it, not even herself.

"It does not appear anywhere in the testimony, that Mr. Bryant, or any one else, explained to Miss Unruh the right of revocation, and how her failure to reserve that right would affect her in the future.

"The consideration, claimed by Dr. Lukens, or how the amount was arrived at, did not appear. It was alleged by Miss Unruh, and not denied by the doctor, that no bill had ever been presented. No bill was presented before the master; no itemized account; no statement of the number of visits; nothing on which the master could form an opinion as to those visits and place a value upon the same. The excuse for this absence was, as the doctor said, because Miss Unruh had promised to compensate him liberally for his services in a will which was afterwards made. But this will was made shortly after the commence-

ment of his employment, and was canceled within a few months thereafter. It would seem almost incredible that a business man would, for almost five years, visit his patient, his principal and his client, upwards of a thousand times, and keep no record, make no charge, and have no books of any kind to show either the number of the visits or their value.

"One peculiarity of the case, as it presented itself to the master, was in the fact that Messrs. Amerling & Son and Mr. Bryant had offices together in the same room, and that Mr. Haugh, her other attorney, had his office in the same building and on the same floor. And that, at the very time that Mr. Bryant prepared the deed of trust, for which Emeline Unruh says she paid him the sum of $150, Mr. Amerling was the counsel for Dr. Lukens, although he had been previously counsel for Miss Unruh and was then acting for her in the Nichols case, which had not ended. It is also singular, that Amerling appears of record as counsel for Dr. Lukens in the judgment note of six thousand dollars, already referred to. Subsequently to the execution of the deed in question, according to the testimony of Miss Unruh, Mr. Amerling sued out two certain mortgages for her, and as the proceeds of the sheriff's sale did not realize enough to pay the claim, he subsequently entered judgment on the bonds, and removed the same to Montgomery county, and received certain amounts thereon from the award of an auditor appointed to distribute certain funds in that jurisdiction. The doctor claims, in his testimony, that these bonds were voluntarily given to him, and his counsel admits that the judgments thereon were assigned to him, as a voluntary gift from Emeline Unruh, who on the contrary asserts he only held them for the purpose of collection.

"In the deed of trust, so called, the subject of the present litigation, Miss Unruh placed out of her hands and control, all her real estate. She subsequently gave to the doctor a judgment note for $1,000, which note seems to have been prepared by her own counsel, Mr. Bryant, she says, because of a fear she had that the trust deed that then had been executed would be interfered with, and she made to lose all her property; Dr. Lukens alleges in settlement of a charge of slander made by him. At all events this note was entered up, judgment had thereon, and the Germantown Saving Fund, her depositaries,

attached as garnishees. Both her real and personal estate were thus put out of her own name and beyond her control. The income of the real estate alone was hers during life, and at her death the whole estate would be distributed among the defendants in this bill.

"Whether these matters as stated in the testimony of the various parties be true or not, and there was a deal of confusion and contradiction throughout, one thing is true, and seems to be admitted by all interested in the cause, that by this deed Miss Unruh entirely conveyed away all her real estate; that Dr. Lukens was her agent, her physician, and her confidential friend, and that the only consideration which passed from him to her was the value of the services he rendered her as such. That Catharine Brown and the church have relinquished all and any rights under the said deed, and agree that the decrees as prayed for shall be made.

"It did not appear to the satisfaction of the master that this deed in question had ever been delivered to Dr. Lukens. It is certain that he never formally, or in writing, accepted the trust. The most that he did was to tell Mr. Bryant, the attorney for Miss Unruh, who informed him of the provisions of the deed, that he would act as such trustee. The deed, however, has been continuously in the possession of Mr. Bryant from the time of its record until it was produced before the master. He says upon that subject: 'I took them to my office and put them in a box, and there they remained until I was called upon to testify, when I took them from there to your office and left them there.' He afterwards qualifies this answer by saying, 'They had been in my possession and also in Dr. Lukens's possession.' 'He came to my office and examined them, perhaps Miss Unruh came there, and very likely did. They remained in my box at No. 142 South Sixth street, together with all my papers and receipts.' 'I had a box in which I kept all my business transactions with Miss Unruh, and all the papers, policies, deeds, and all the papers referring to this were kept in that box.' This, it is suggested by the master, in a matter of such grave importance as the conveyance of all the property of a woman to her physician and agent, is very far removed from what the law contemplates as a proper and complete delivery.

" Much of the testimony taken, if not entirely irrelevant, did not bear directly upon the question at issue before the master. It was undoubtedly proven, from the testimony of Dr. Lukens himself, that when he was called upon to first see Miss Unruh, it was at the suggestion of a fellow physician, and to examine her as to her mental condition. As he says, ' to see whether she was compos mentis and capable of transacting her own business.' And, although he did not see her from 1883 to 1886, yet, he says, ' After treating her for several days, it became evident from the condition in which I found her mentally, that it was necessary for her to have some one to take charge of her business affairs.'

" It is not denied by Dr. Lukens that, from that time until the execution of the deed which is the subject of the present proceedings, he acted as her physician, her attorney in fact and her adviser, but it is claimed that the services he rendered her in these different capacities is an adequate and valid consideration for such conveyance.

### "FINDING OF FACTS.

" The master finds from the testimony the following:

" 1. That on Jan. 5, 1891, Emeline Unruh, the complainant, executed a certain deed for her real estate to the defendant, Benjamin F. Lukens, in trust, for certain purposes therein set forth. That the said deed was duly and properly recorded by her attorney.

" 2. That the same was never delivered to the defendant, Benjamin F. Lukens.

" 3. That, at the time of the signing of the aforesaid deed, the defendant, Benjamin F. Lukens, was the physician and business attorney of the complainant, and had been such from April 19, 1886.

" 4. That by this deed the plaintiff conveyed all her real estate, after her death, to the defendant, Dr. Lukens, and other parties, and that the latter have renounced all right to the same, and ask that the decree prayed for in the bill be made.

" 5. That no consideration passed from the defendant to the plaintiff at the time of the execution of the said deed.

" 6. That, at the time of the execution thereof, Emeline Unruh was upwards of seventy years of age.

" 7. And that the effect of the said deed was never properly explained to her.

## "FINDINGS OF LAW.

" In the view taken by the master of the matter before him, the question to be determined, is as to the validity and adequacy of the consideration.

" The position occupied by Dr. Lukens, towards Miss Unruh, was of such a confidential character as to throw upon him the duty of showing, expressly, that the arrangement was fair and conscientious, beyond the reach of suspicion. In Greenfield's Estate, 14 Pa. 506, the court says : ' While these connections exist, the advisor shall take no benefit to himself, from contracts or other negotiations, without establishing this perfect fairness and adequacy, and that the deed was the deliberate act of the confiding party, after being fully informed of his rights, interest and duties, and put on his guard against even the suggestion of his own inclination.'

" It was argued by the counsel for the defendant, that the services of Dr. Lukens, and the promise of Miss Unruh to compensate him liberally, together, formed such valid consideration, and that this conveyance in trust to Dr. Lukens, was coupled with an interest which vested in him under the said deed, and which could not be divested by any subsequent action of Miss Unruh. It is suggested, however, that, whilst the reasoning of the counsel may be ordinarily true, the confidential relations existing between Miss Unruh and Dr. Lukens, were such as to withdraw this particular conveyance from the operation of ordinary rules, and throw upon the beneficiary the duty of showing, expressly, that the arrangement was fair and conscientious, beyond the reach of suspicion. This was not done. The value of the services rendered was not attempted to be proven, nor were the items of such services submitted. It is true, the doctor testified that upwards of one thousand visits were made necessary by his duties, but he rested his consideration upon the promise, which he alleged was made to him, to compensate him by a will, and made no attempt to affix a value to them. It is not necessary to run through the various judgment notes, mortgages and other conveyances, which were alleged to be frauds, in the law as well as in morals, because the question at issue is, in the master's view, only that of the

existence of the relationship suggested, and the necessity, in consequence of such relationship, of proof beyond the possibility of doubt or suspicion, of the fairness of the dealing, and the full knowledge of Miss Unruh as to the result of her act. From the time of Greenfield's Estate this has been the recognized law of the commonwealth, and in Darlington's Estate, 147 Pa. 624, the court, in citing Greenfield's Estate, says further, and only in the development of the same principle: ' The confidential relation is not confined to any specific association of the parties to it. It embraces agent and principal, physician and patient,' so that, in the present case, the defendant, Lukens, occupied a relation which was doubly a confidential one.

"In view of the facts as found, and the law bearing upon those facts, the master has, therefore, concluded, and respectfully submits to the court, that the prayers of the bill should be granted, and that the defendant, Benjamin F. Lukens, be directed to reconvey the title to the property in question to the plaintiff, Emeline Unruh, freed and discharged of any and all trusts."

Exceptions to the master's report were dismissed by the court, and a decree entered in favor of plaintiff, with costs.

*Errors assigned* were (1) in not dismissing the bill; (2) in confirming the report; (3) in dismissing the exceptions, quoting them all in one assignment; in entering decree, quoting it.

*Wm. F. Johnson*, for appellant, cited: Wilt v. Franklin, 1 Bin. 530; Eyrick v. Hetrick, 13 Pa. 493; Stephens v. Huss, 54 Pa. 20; Eckman v. Eckman, 55 Pa. 275; McConomy v. Reed, 152 Pa. 42; Fellows's Ap., 93 Pa. 473; Nace v. Boyer, 30 Pa. 110; Toker v. Toker, 3 DeG. & Sm. 487; Russell's Ap., 75 Pa. 269; Reese v. Ruth, 13 S. & R. 434; Eckman v. Eckman, 68 Pa. 460; Thomas v. Loose, 114 Pa. 45; Kesler's Est., 143 Pa. 386; Phillips v. Mullings, L. R. 7 Ch. Ap. 244.

*Melick & Potter*, for appellee, cited: Greenfield's Est., 14 Pa. 505; Darlington's Est., 147 Pa. 624.

PER CURIAM, Feb. 4, 1895:

The controlling facts of this case are sufficiently presented

in the pleadings and report of the learned master which was approved by the court below. Our examination of the record has satisfied us that there is no substantial error either in the findings of fact, or in the legal conclusions of which the decree is predicated. There appears to be nothing in either of the specifications of error that requires special notice. The questions involved are sufficiently considered in the master's report, and for reasons there given we think the decree should be affirmed. There appears to be no reason for imposing any part of the costs on the appellee.

Decree affirmed and appeal dismissed with costs to be paid by appellant.