TRENOUTH, APPELLANT, v. MULRONEY, RESPONDENT.

No. 9021.

Submitted December 8, 1950. Decided February 10, 1951.

227 Pac. (2d) 590.

Messrs. Smith, Boone & Rimel, Missoula, for appellant.

Mr. Fred W. Schilling, Missoula, for respondent.

Mr. Russell E. Smith and Mr. Schilling argued orally.

MR. CHIEF JUSTICE ADAIR:

Dr. S. M. Trenouth, a physician, brought this action at law against the defendant Thomas E. Mulroney as administrator of the estate of Mrs. Lyde Schall Buckhouse, deceased, to recover a money judgment of $1,563 on a disallowed creditor's claim for professional services claimed to have been rendered under a written power of attorney executed by decedent six years prior to her demise.

Plaintiff is associated with a number of other doctors in the practice of medicine at Missoula, Montana, in what is known as the Western Montana Clinic.

On September 30, 1942, the decedent signed and executed a writing termed ''Power of Attorney'' prepared by an attorney at law at the request of decedent which reads:

''Power of Attorney

''Know All Men By These Presents:

''That I, Lyde Schall Buckhouse, of Arlee, Lake County, Montana, do by this instrument make, constitute and appoint Stanley M. Trenouth, M. D., of Missoula, Montana, my true and lawful attorney-in-fact and my agent, for the purposes hereinafter stated:

''Whereas, said Stanley M. Trenouth, M. D., is an eminent physician and surgeon in whom I have the utmost confidence and who has heretofore been, and is now, my physician, and it is my earnest wish and desire that when and if I am in need of medical or surgical care and attention, that such surgical care and attention will be rendered to me by said Stanley M. Trenouth, M. D.; and in view of the fact that when I am so in need

of such medical or surgical care and attention, I may not be able to declare my wish and intention so to be attended and treated or operated upon by said Stanley M. Trenouth, M. D.,

"Now Therefore, after earnest and thoughtful consideration and *in view of the uncertainties of the future,* I do hereby declare it to be *my* wish, *will* and desire that any and all medical and surgical care or attention that I may ever hereafter be in need of, be rendered to me by said Stanley M. Trenouth, M. D., and I do hereby give him the complete and absolute authority and right to render and to administer to me whatever medical or surgical care in his judgment I am in need of at any time in the future; giving and granting to him the full and absolute right, power and authority to use his own discretion and judgment as to any medical or surgical care which he believes should be administered to me; *and I expressly declare it to be my will,* wish and intent *that no other person* shall have any right whatsoever to interfere with his decision, discretion or right so to administer to me such medical or surgical care or attention; giving and granting unto said Stanley M. Trenouth, M. D., such full right, power and authority;

"And in consideration of the foregoing trust and confidence which I have in said Stanley M. Trenouth, M. D., *and in the security and peace of mind* which I have by reason of the execution of this instrument *and of any future services of any kind which may be rendered to me by him,* I do hereby acknowledge my indebtedness to him in the sum of Two Thousand Dollars ($2,-000.00), *and I direct that in case of my death, my executor or administrator or heirs shall pay to him said sum of $2,000.00,* if said amount has not theretofore been paid to him, *or the unpaid amount thereof in case part only has been paid to him.*

"In Witness Whereof, I have hereunto set my hand and seal at Missoula, Montana, this 30th day of September, 1942.

"Lyde Schall Buckhouse (Seal)"
[Acknowledged before a Notary.]  Emphasis supplied.

Immediately upon the execution thereof the decedent deliv-

ered the above document to plaintiff who gave it to his office girl at the Clinic to put in the safe where it remained until after the death of decedent. Upon the appointment of defendant as administrator the plaintiff attached the "Power of Attorney" to a creditor's claim for $1,563 and presented same to the administrator for allowance.

The claim, with the title, caption and claimant's affidavit omitted, reads:

### "Creditor's Claim

"The undersigned creditor of Lyde Schall Buckhouse, deceased, presents his claim against the Estate of said deceased, with the necessary vouchers, for approval as follows, to-wit:

Estate of Lyde Schall Buckhouse, Deceased
to Stanley M. Trenouth, M. D., Dr.

| | |
|---|---|
| For professional services rendered to deceased under Power of Attorney and Agreement attached hereto no part of | $2,000.00 |
| which has been paid, except the sum of $437.00 | 437.00 |
| Balance | $1,563.00" |

The $437 credit is for money paid by decedent to the Western Montana Clinic for medical services rendered her subsequent to the execution and delivery of the "Power of Attorney." The claim was rejected by the administrator whereupon plaintiff brought this action.

In his complaint plaintiff pleads: That decedent executed the "Power of Attorney" and thereafter delivered same to him; that he accepted the instrument and thereafter performed all acts required of him thereunder; that during decedent's lifetime she paid to the plaintiff and to doctors selected by him to perform various services for her, the sum of $437, but that no part of the balance representing the difference between $2,000 and $437 has been paid and that such balance in the sum of $1,563 is now due, owing and unpaid.

Defendant's answer admits his appointment as administrator; admits the execution of the so-called "Power of Attorney;" admits that the instrument was delivered to plaintiff and that he rendered her certain medical and surgical care, but denies that plaintiff performed all the acts required to be performed by him under the instrument; admits that during her lifetime decedent paid $437 for professional services rendered by plaintiff and other doctors selected by him; avers that upon the death of decedent the "Power of Attorney" became null, void and ceased to be of any force or effect and denies that there is due or owing to plaintiff the sum of $1,563 or any other amount. As a separate defense defendant denies that plaintiff performed all the acts which he was required to perform under the instrument and alleges that at the time the instrument was delivered to plaintiff there was an understanding between plaintiff and decedent that during the remainder of decedent's lifetime plaintiff would, without cost or expense to her, render to her all necessary and reasonable services as a physician but that in violation of said instrument plaintiff charged decedent $437 for professional services and required her to pay same.

Plaintiff filed a reply wherein he denied that upon the death of decedent the power of attorney became null and void; denied that he accepted the power of attorney with the understanding that during the remainder of her lifetime he would without cost to decedent render her all necessary and reasonable services as a physician; admits that plaintiff rendered needed professional services to decedent and admits that plaintiff and other physicians selected by him charged her the sum of $437 and that she paid such sum.

A jury having been waived, trial of the issues was had before the court. Two witnesses testified on behalf of plaintiff. No evidence was introduced by defendant. The court made written findings of fact and conclusions of law in favor of defendant and in accordance therewith judgment of dismissal was entered from which judgment plaintiff has appealed.

There is no evidence that at the time decedent signed the "Power of Attorney" or that at the time she delivered it to plaintiff she was then indebted to plaintiff in any sum or amount whatever. However, the evidence affirmatively shows that subsequent to the execution and delivery by her of the power of attorney, she was regularly billed by the clinic for medical care and attention rendered her by the members of the clinic; that such bills and charges totaled $437 and that decedent paid for such services and charges in full.

On his direct examination at the trial, plaintiff testified:

"Q. At the time that instrument was delivered to you had you ever seen it prior to that time? A. No.

"Q. Had you ever discussed with Mrs. Buckhouse the subject matter of the agreement, prior to that time? A. No.

"Q. The instrument then came to you as something of a surprise? A. It was very much of a surprise.

"Q. After the instrument was given to you, what did you do with it? A. I gave it to our office girl to put in the safe.

"Q. Then after Mrs. Buckhouse's death, it was given to me, was it not? A. Yes.

"Q. It was in your possession from the time it was given to you by Mrs. Buckhouse until her death? A. Yes.

"Q. At the time that Mrs. Buckhouse delivered this instrument to you, did you read it? A. Yes.

"Q. Was anything said to Mrs. Buckhouse as to whether you would accept it or not?

"Mr. Schilling: We object to that. Our witness is gone. The instrument speaks for itself. It would be calling for hearsay.

"Mr. Smith: This question was as to what he said about accepting it.

"The Court: All right, Overruled.

"Q. What did you say as to whether you would accept the instrument? A. I agreed to accept it.

"Q. Knowing the contents of the instrument, was anything said by you as to whether you would do the things that the instru-

ment requested you to do? A. I told her I would do them to the best of my ability.

"Q. After the instrument was executed and delivered to you, did you then continue to act as Mrs. Buckhouse's physician? A. Yes, I did.

"Q. Did you perform, yourself, all of the services that were rendered to her? All the medical services rendered? A. No, I didn't.

"Q. When she needed medical services, you recommended the doctors to do particular things for her? A. I did.

"Q. Those doctors were doctors in the Western Montana Clinic, is that correct? A. Yes.

"Q. You are a member of this firm of doctors? A. I am.

"Q. When these services were rendered by the members of the Clinic, were regular bills sent to her from time to time? A. Yes.

"Q. Is the amount of $437.00 the amount that was charged by the Clinic to Mrs. Buckhouse between the date you got this instrument and the date of Mrs. Buckhouse's death? A. It is to the best of my knowledge.

"Q. Other than that, there were no payments made by Mrs. Buckhouse to you or to the Clinic? A. No.

"Q. This $437.00 would include charges by doctors other than yourself? A. Yes."

On his cross-examination plaintiff testified:

"Q. You say you are a member of the Western Montana Clinic? A. Yes.

"Q. And have been during all the time mentioned here? A. Yes.

"Q. These bills that were rendered to Mrs. Buckhouse were rendered by the Western Montana Clinic office? A. Yes.

"Q. The charges were the charges of the Clinic? A. Yes.

"Q. Were the payments made to you directly, or were they made to the Clinic? A. They were made to the Clinic.

"Q. The money that Mrs. Buckhouse paid, she paid it to the Clinic for these services, and not to you? A. That's correct.

"Q. Because you are a member of this organization? A. Yes.

"Q. The charges, I take it, were the regular Clinic charges? A. Yes.

"Q. For the services rendered? A. Yes.

"Q. And the payments were made for the services rendered? A. Yes."

In its findings of fact and conclusions of law incorporated in its judgment the trial court found that at the time of the execution and delivery of the "Power of Attorney" there was no debt or obligation owing by decedent to plaintiff; that plaintiff knew nothing about the execution of the writing until it was delivered to him; that thereafter plaintiff personally rendered no professional services to decedent and that he did nothing whatever on his part in the performance of the instrument; that subsequent to its execution all medical and surgical services received by the decedent were done and performed by the doctors of the Western Montana Clinic; that decedent was billed by the clinic for such services and that she paid the same to the clinic; that such payments were made without regard to the instrument and that none of the payments were endorsed on the instrument; that plaintiff breached the terms and conditions thereof on his part to be performed in that he entirely failed to render any medical, surgical or professional services to decedent after the writing was delivered to and accepted by him.

The court thereupon concluded that as a power of attorney the instrument died with decedent; that there was no consideration of any kind past, present or future passing from plaintiff to decedent for the execution and delivery of the instrument; that plaintiff breached the terms and conditions thereof by his failure to perform what was required of him under the terms and conditions thereof; that viewing such instrument as an order to the administrator to pay the plaintiff the amount therein mentioned, it constituted a testamentary disposition of the property of de-

cedent; that the instrument is not executed with any of the formalities required for a testamentary disposition and that it is not a will.

In this action at law wherein a jury was waived the court found for the defendant and on appeal the appellate court indulges the presumption *in limine* that the trial court's findings are correct and that the conclusion reached is justified, Dover Lumber Co. v. Whitcomb, 54 Mont. 141, 149, 168 Pac. 947. In aid of such presumption every legitimate inference will be drawn from the evidence. Tucker v. Missoula Light & Ry. Co., 77 Mont. 91, 250 Pac. 11; Kosonen v. Waara, 87 Mont. 24, 30, 285 Pac. 668; State v. Schoenborn, 55 Mont. 517, 179 Pac. 294; Lindeberg v. Howe, 67 Mont. 195, 199, 215 Pac. 230.

*Power of Attorney.* The writing on which plaintiff seeks to recover is denominated ''Power of Attorney.'' The ordinary power of attorney is merely an instrument in writing authorizing another to act as one's agent. The McLaren Gold Mines Co. v. Morton, 124 Mont. 382, 224 Pac. (2d) 975. Unless the power of the agent is coupled with an interest in the subject of the agency it is terminated, as to every person having notice thereof, by the death of the principal. R. C. M. 1947, sec. 2-305.

The general rule for determining what constitutes a power coupled with an interest is as stated in 2 Am. Jur., Agency, section 78, page 63, viz.: ''The question is, does the agent have an interest or estate in the subject-matter of the agency independent of the power conferred, or does the interest or estate accrue by or after the exercise of the power conferred. If the former, the agency is coupled with an interest; if the latter, it is not. It has also been laid down that the estate or interest vested or created in the agent must be such as the agent could transfer or convey in his own name in the event of the death of the principal.''

In the annotation in 64 A. L. R. at page 380, it is said: ''In order that a power may be irrevocable because coupled with

an interest, it is necessary that the interest shall be in the sub-ject-matter of the power, and not in the proceeds which will arise from the exercise of the power.''

The power of attorney executed by Mrs. Buckhouse clearly did not create a power coupled with an interest; hence, it terminated upon her death. R. C. M. 1947, sec. 2-305; Gardner v. First National Bank of Billings, 10 Mont. 149, 25 Pac. 29, 10 L. R. A. 45, citing the leading case of Hunt v. Rousmanier's Admrs., 8 Wheat 174, 5 L. Ed. 589. The California statute from which section 2-305, supra, was taken was construed in: In re Scott, 205 Cal. 525, 271 Pac. 906, 909; Capital National Bank of Sacramento v. Stoll, 220 Cal. 260, 30 Pac. (2d) 411. See also, Bowman v. Ledbetter, 173 Okl. 345, 48 Pac. (2d) 334; Terre Haute Brewing Co. v. Dugan, 8 Cir., 102 F. (2d) 425; 2 Am. Jur., Agency, sec. 59, p. 52.

There is no evidence, nor does the record herein otherwise show, that decedent owed plaintiff anything at the time she executed the ''Power of Attorney'' and the reasonable inference to be drawn from plaintiff's testimony and the recital in the instrument that ''in consideration of the foregoing trust and confidence which I have in said Stanley M. Trenouth, M. D., * * * and *of any future services* of any kind which may be ren-dered to me by him,'' is that decedent did not owe plaintiff any-thing at the time she signed and acknowledged the writing. A reasonable inference is sufficient to sustain the trial court's findings and conclusion. R. C. M. 1947, secs. 93-1301-2 to 93-1301-4; Jenkins v. Northern Pac. Ry. Co., 44 Mont. 295, 119 Pac. 794; California Packing Co. v. McClintock, 75 Mont. 72, 76, 241 Pac. 1077.

Stronger and more positive and definite language could not well have been employed in the writing which decedent executed to show the confidence reposed by her in the particular learning, experience, skill and ability of plaintiff as a physician and sur-geon, and that she intended by the writing that plaintiff and he alone was to give her such medical and surgical care and treat-

ment as she should require and plaintiff's testimony is: "I told her I would do them to the best of my ability." However, following the delivery to plaintiff of the instrument he thereafter failed to personally give to decedent the medical services that were required by her or that were rendered to her, but instead plaintiff recommended other doctors at the clinic to do and perform such professional services, thus assuming to delegate to others the duties he had assumed and which he had agreed he would personally do and perform.

The general rule is thus stated in 2 Am. Jur., Agency, section 196, page 154, viz.: "It is a general rule that in all cases of delegated authority where personal trust or confidence is reposed in the agent and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another unless there is a special power of substitution, either express or necessarily implied." See also, Restatement of the Law of Agency, sec. 78, p. 186.

In Bond v. Hurd, 31 Mont. 314, 323, 78 Pac. 579, 583, an employee of defendant employed a doctor to treat defendant's injured employee and such doctor then employed one Dr. Miller to assist him in treating the patient. Thereafter the second doctor assigned his claim to Bond. In holding that Bond could not recover on the assigned claim of Dr. Miller the court said: "We are satisfied that the record fails to show any such emergency as authorized the employment of Miller, or that Dr. Miller was employed by any one having competent authority to that end." So here, we find no evidence to show any emergency that would justify plaintiff to turn decedent over to other doctors for the medical or surgical services which he had agreed to personally render. In delegating the task to others to perform plaintiff breached the express provisions of the power of attorney as the trial court correctly concluded and held. Compare: 1 Page on Contracts, 2nd Ed., p. 753, sec. 455; 5 Williston on Contracts, Rev. Ed. 1937, pp. 4541-4545, sec. 1625A, note 14;

Woodbury v. Woodbury, 141 Mass. 329, 5 N. E. 275, 55 Am. Rep. 479; Bogie v. Nolan, 96 Mo. 85, 9 S. W. 14; Unruh v. Lukens, 166 Pa. 324, 31 A. 110; Warren v. Pfeil, 346 Ill. 344, 178 N. E. 894; Gerrish v. Chambers, 135 Me. 70, 189 A. 187.

*Testamentary Disposition.* There is much in the written instrument of a testamentary character, which portions we have set forth in italics.

R. C. M. 1947, sec. 91-229, provides: "A conditional disposition is one which depends upon the occurrence of some uncertain event, by which it is either to take effect or be defeated."

The power of attorney contains a conditional disposition and ▉▉▉▉▉ bequest of $2,000 or of any balance thereof unpaid upon her death. While it was her right to dispose of her property as she saw fit, In re Benson's Estate, 110 Mont. 25, 98 Pac. (2d) 868; In re Irvine's Estate, 114 Mont. 577, 591, 139 Pac. (2d) 489, 147 A. L. R. 882; 57 Am. Jur., Wills, sec. 1503, p. 1016; and 19 Am. Jur., Estates, sec. 58, p. 520, yet to make a valid testamentary disposition the decedent was required to execute her will and have it witnessed in the manner required by our codes and this she wholly failed to do. In re Williams' Estate, 50 Mont. 142, 154, 145 Pac. 957; In re Watts' Estate, 117 Mont. 505, 160 Pac. (2d) 492; In re Noyes' Estate, 40 Mont. 178, 105 Pac. 1013; In re Bragg's Estate, 106 Mont. 132, 76 Pac. (2d) 57.

The trial court found there was no debt or obligation owing from Mrs. Buckhouse to plaintiff at the time she executed the power of attorney and therefore it was not a contract between them but only an attempted testamentary disposition of $2,000 and as such void for the reasons stated.

In 57 Am. Jur., Wills, section 40, page 67, it is said: "The ▉▉▉▉▉ dominant purpose of the maker of an instrument as manifested therein controls in determining whether the instrument is a contract or a will. Whether any given writing is a will or a contract must be determined by the character of its contents, rather than from its title or any formal words with which it may begin or conclude, but words which do not change the legal

512

effect of the instrument may, nevertheless, be significant by revealing the intention with which it was made."

In the following cases, with varying fact situations comparable in many instances to those which here obtain, it was held that the instrument involved was a "testamentary disposition" and therefore should have been executed as a will, viz.: United States Trust v. Giveans, 97 N. J. L. 265, 117 A. 46; American University v. Conover, 115 N. J. L. 468, 180 A. 830; In re Murphy's Estate, 193 Wash. 400, 75 Pac. (2d) 916; Spinks v. Rice, 187 Va. 730, 47 S. E. (2d) 424; Taylor v. Wilder, 63 Colo. 282, 165 Pac. 766. See also, cases cited in 2 A. L. R. at pages 1474 and 1475. The instrument should have been executed in the manner required by sections 91-107 and 93-1401-3, R. C. M. 1947, in order to make the conditional bequest valid. In re Watts' Estate, supra; In re Williams' Estate, supra.

Under the authorities cited the judgment of the trial court is affirmed.

MR. JUSTICES METCALF, BOTTOMLY, ANGSTMAN and FREEBOURN, concur.