**MUTUAL OF OMAHA INSURANCE COMPANY, Plaintiff,**

v.

**R. William WALSH, Administrator of the Estate of A. E. Kraling, Deceased, et al., Defendants.**

**No. CV 74–18–GF.**

United States District Court,
D. Montana,
Great Falls Division.

June 10, 1975.

James, Sogard, Fopp & Paul, Great Falls, Mont., for plaintiff.

Baucus, Corontzos & Walsh, Cure & Borer, Graybill, Ostrem, Warner & Crotty, Great Falls, Mont., for defendants.

## OPINION

RUSSELL E. SMITH, Chief Judge.

This interpleader action, which has been submitted on an agreed statement of facts, involves the defendants' conflicting claims to the proceeds of an insurance policy.

Alton E. Kraling and Jacqueline Anglin Kraling were husband and wife at the time of their instantaneous and simultaneous deaths in February 1973. At the time of death Alton E. Kraling was the beneficiary of a group life policy issued by Mutual of Omaha Insurance Company (Mutual of Omaha), the plaintiff in this interpleader action.

The policy provided that Mutual of Omaha would pay $50,000.00 on the death of A. E. Kraling and $25,000.00 on the death of Jacqueline A. Kraling. The benefits are payable as follows:

16. Payment of Claims: Indemnity for loss of life will be payable in accordance with the beneficiary designation and the provisions respecting such payment which are prescribed herein and effective at the time of payment. If no such designation is then effective, indemnity for loss of

life of the Insured shall be payable as follows: (a) to the spouse of the Insured, otherwise (b) equally to the then living lawful children of the Insured, including stepchildren and adopted children, if any, otherwise (c) equally to the Insured's parents or parent then living, otherwise (d) to the estate of the Insured. Any other accrued indemnities unpaid at the Insured's death may, at the option of the Company, be paid either to the Insured's beneficiary or to his estate. All other indemnities will be payable to the Insured.

The history of the relationships giving rise to the claims is as follows:

Edna Morris Coleman (hereafter Edna) and E. H. Coleman, during their marriage which was dissolved by their divorce sometime prior to May 6, 1940, became natural parents of Dixie Parker.

Edna and Alton E. Kraling (hereafter Alton), during their marriage which commenced May 6, 1940, and terminated upon the death of Edna in 1969, became the natural parents of Johnnie A. Hausner.

Jacqueline Anglin (hereafter Jacqueline) and Henry Richard Anglin, during their marriage which terminated in 1970, became the adoptive parents of Terry Anglin and Sherry Schneider.

Jacqueline and Alton were married in May 1972.

R. William Walsh is the Administrator of Alton's estate.

The defendants are entitled to share in the insurance proceeds as follows: The $50,000.00, less a proportionate part of the plaintiff's attorney's fees and costs, shall be divided equally among Johnnie A. Hausner, daughter, Dixie Parker, stepdaughter, Terry Anglin, stepson, and Sherry Schneider, stepdaughter. The $25,000.00, (less the estate's share of the costs) payable on the death of Jacqueline (Anglin Kraling) shall be paid to the defendant Walsh as administrator.

The reasoning is: To the extent that the policy does not provide for the disposition of its proceeds, the Uniform Simultaneous Death Act (R.C.M. 1947 § 91–423 et seq.) applies. If the amount payable on the death of Alton is paid as though he had survived Jacqueline then she is eliminated as a beneficiary and these words in the policy govern:

> Indemnity for loss of life will be payable . . . equally to the then living lawful children of the Insured, including stepchildren and adopted children . . . .

The problem is not whether as a matter of legal logic the step-relationship with Alton can survive the deaths of Edna and Jacqueline whose marriages to Alton brought the step-relationships into being in the first place. See the comprehensive discussion in *In re Bordeaux' Estate*, 37 Wash.2d 561, 225 P.2d 433 (1950). Rather it is a question of intent. What did Alton intend the word "stepchild" to mean? It is unnecessary here to find some common meaning for the word "stepchild" because the quoted language furnishes its own interpretation. In the policy here Jacqueline was described as the primary beneficiary. On her death, prior to that of Alton, there could be no stepchildren of any kind if a meaning is given the word "stepchild" which makes the step-relationship dependent upon the continuance of the marriage that created the relationship. In such a case the word "stepchild" would have no meaning. Rather than read the word "stepchildren" out of the policy, the court should give it a meaning,[1] and since it does no violence to the word "stepchild" to employ it as describing a child of one's wife by a former marriage, without regard to the death of the wife, that meaning is given.

I do not distinguish between Dixie Parker and Terry Anglin and Sherry Schneider, although the latter two were adopted children of their mother, be-

---

1.  American Cent. Life Ins. Co. v. American Trust Co., 5 F.2d 71 (6th Cir. 1925).

cause of R.C.M.1947 § 61–212 making the relationship of the adopted child to the adopting parent that of a natural child. While the agreed facts indicate that Dixie Parker was closer to Alton than were Terry Anglin and Sherry Schneider, I do not find anything which would justify a finding that it was Alton's intent to distinguish between the children of his wife Edna and those of his wife Jacqueline.

The problem which arises with respect to the $25,000.00 payable on the death of Jacqueline is whether she should be treated as an insured with payments going to the children and stepchildren, or whether the amounts payable on her death are to be paid under the language:

> Any other accrued indemnities unpaid at the Insured's death may, at the option of the Company, be paid either to the Insured's beneficiary or to his estate. All other indemnities will be payable to the Insured.

Alton purchased the policy, paid the premiums, and is the named insured in the policy. Jacqueline is described as a dependent spouse. If the word "dependent" is substituted for the word "Insured" in paragraph 16 of the policy, then benefits are payable to her children and stepchildren; otherwise they are payable under the language last quoted. Part A of the policy describes the injuries for which payment will be made. The last paragraph of Part A is as follows:

> When coverage is provided to a dependent, the above definition of injuries applies to such dependent by substituting the word "dependent" for the word "Insured" wherever it appears. A dependent is a person eligi-

ble for coverage hereunder and insured in accordance with General Provision 5.

It is argued by all of the children and stepchildren that, by virtue of the last-quoted language, the word "dependent" should be substituted for the word "Insured" in paragraph 16. The exact language of Part A of the policy confines the substitution to "the above definition of injuries" and the policy taken as a whole does not require a wider substitution. The general purpose of the policy is to indemnify the insured. Only dependents may be insured and when persons cease to be dependents, the insurance as to them ceases. This indicates that the purpose of the policy is to protect the insured against losses which he might sustain by reason of the injury or death of the dependents. In short, the insurance, while covering dependents, is for the benefit of the insured. An analysis of paragraph 16 confirms the thought that the purpose of the policy is to benefit the insured. All of paragraph 16, except the last sentence, relates to payments on the insured's death. The last sentence, "All other indemnities will be payable to the Insured . . .," means that if a dependent spouse or child is injured or killed, the benefits are paid to the insured and not to the dependents.

With the general purpose in mind, I turn to the other language of the policy which indicates to me that the substitution language of Part A refers only to Part A. Throughout the policy[2] the words "Insured or dependent" are used. The use of the word "dependent" is wholly unnecessary if the substitution provision of Part A is applicable to the whole policy.[3] I conclude that the

2. The first sentence of Part B, the first sentence in the first and second paragraphs of Part C, and the third clause in Part D.

3. In paragraph 4 of Part E the words "the insurance of any Insured or dependent" are used, and in the third clause in paragraph 5c of Part E the words "dependent's insurance"

are used. This word usage may conflict somewhat with the thought that the insurance is for the benefit of the insured. *But see* Seeger v. Prudential Insurance Co. of America, 283 N.E.2d 462 (Ct. of C.P., Ohio 1970), where it was said at 463–64:

> "This Court holds that while a family life insurance contract such as is now before

$25,000.00 is payable under one of the last two sentences of paragraph 16, which are:

"Any other accrued indemnities unpaid at the Insured's death may, at the option of the Company, be paid either to the Insured's beneficiary or to his estate."

and

"All other indemnities will be payable to the Insured."

■ But which sentence controls? It appears to me that the words "other indemnities" refer to indemnities payable during the decedent's lifetime by reason of the injury of the insured or the injury or death of any of the dependents, and that the words "other accrued indemnities unpaid at the Insured's death" govern the payment of "other indemnities" which were payable but which for some reason were not paid during the decedent's lifetime. Since Alton presumptively survived Jacqueline, the benefits payable on her death were "accrued benefits" unpaid at the time of the insured's death.[4] As to the "accrued benefits," the policy gives Mutual of Omaha the option of paying to the "Insured's beneficiary or his estate." Mutual of Omaha has not exercised that option, and although the estate has demanded payment on the theory that the $25,000.00 was payable as "other indemnities," none of the parties has requested Mutual of Omaha to exercise the option.

■ As I view the matter, the $25,000.00 should be paid to the estate.

Had Jacqueline died ten days prior to the death of Alton there can be no doubt but that Mutual of Omaha would have at that time an absolute obligation to pay Alton $25,000.00. The fact of Alton's death prior to the time the money was paid would not have altered Mutual of Omaha's obligation. It may be that Alton himself might have, during his lifetime, done something with his $25,000.00; he might have chosen an action which would have thwarted his estate and the beneficiaries of it, whether heirs, devisees, or creditors. However, under Montana law Alton could not in his lifetime empower someone after his death to alter the nature of Mutual of Omaha's obligation and diminish the rights of those who at the moment of his death succeeded by law to the ownership of it. The option in effect gives Mutual of Omaha a power of attorney to act after Alton's death. It was not a power of attorney coupled with an interest, and under Montana law, it could not survive Alton's death. R.C.M.1947 § 2–305; *cf. Trenouth v. Mulroney*, 124 Mont. 499, 227 P.2d 590 (1951). I hold the option to be invalid as against the estate of Alton.

■ If by reason of some quirk in the laws governing insurance contracts, of which I am unaware, or if by reason of the fact that we deal here with a presumed rather than an actual survivorship, my conclusion is wrong and the option is valid, I would reach the same result on equitable grounds.[5] Only the

---

this Court as attached to each brief is commonly said to insure the lives of each member of the family, it is only the person contracting with the insurer for the issuance of the insurance who is, in fact, the insured as that term has been hereinbefore defined."

4. Although the $25,000.00 was payable by reason of the death of the dependent spouse, the dependent spouse had no property rights

of any kind in the payment. The insurance on her life was for the benefit of the insured and hence the provisions of R.C.M. 1947 § 91–423 do not have the effect of making the dependent spouse a survivor as to the $25,000.00.

5. As above indicated, Mutual of Omaha did not exercise the option. By depositing funds in court it has in effect abandoned the option and is asking the court to distribute the

timing of the death of Jacqueline in relationship to the death of Alton gave the "beneficiaries" any claim. Had Alton lived long enough to collect the dependent insurance, his estate would have gotten the proceeds. I see no equitable reason why the timing of the deaths should change that. Had Alton in the policy actively designated beneficiaries and exhibited some concern for the support or care of particular individuals, the case for individual beneficiaries would be stronger, but the policy exhibits no concern for individuals. Where a decedent does not exhibit a concern sufficient to cause him to specify the persons to whom his property should be distributed, I think it not inequitable that the property should pass to his estate and be distributed according to the law governing the distribution of the estate.

■ I find nothing in the conduct of Mutual of Omaha which in my opinion would justify the award of interest. *See Occidental Life Insurance Co. of Cal. v. Row,* 271 F.Supp. 920 (S.D.W. Va.1967).

■ Whether attorney's fees are allowed in interpleader actions in Montana or not, the general rule [3A J. Moore, Federal Practice § 22.16[2], at 3143 (2d ed. 1974)] and that in the Ninth Circuit is that attorney's fees may be allowed to a plaintiff in an interpleader action. *Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467 (9th Cir. 1953); *Palomas Land & Cattle Co. v. Baldwin,* 189 F.2d 936 (9th Cir. 1951). Mutual of Omaha shall recover its costs and a reasonable attorney's fee, fixed at $1,000.00. The defendants shall each pay his or her own costs.

funds. In any event, the funds are in the custody of the court, and if they are to be distributed, it will be by virtue of a court order. Since interpleader is essentially equi-table in nature, the funds should, in my opinion, in the absence of a controlling rule of law, be distributed according to the equities of the case.