BOND, RESPONDENT, v. HURD, APPELLANT.

(No. 1,961.)

(Submitted October 19, 1904.   Decided November 28, 1904.)

*Master and Servant—Injuries to Servant—Medical Services— Liability of Master—Actions—Change of Venue—Evidence —Burden of Proof—Appeal—Agency.*

1.  Where a motion for a new trial was made on a bill of exceptions, and not on a statement of facts, it was not objectionable for failure of such bill to contain a specification of errors.

2.  Where an appeal was taken from a judgment and from an order denying a new trial, a motion to dismiss the appeal on the ground that the record or statement on the motion for a new trial did not contain a specification of errors was properly denied, since such objection was not ground for dismissal of the appeal from the judgment.

3.  Where at the time suit was brought in B. county, where plaintiff resided, on a cause of action included within Section 613, Code of Civil Procedure, defendant was a *bona fide* resident of V. county, in which he was served, defendant was entitled to a change of venue to V. county as a matter of right.

4.  Where two of the three causes of action alleged in a complaint were actions on an open account for medical services rendered in B. county, and not on express *contracts* to render such services, plaintiff was not entitled to sue thereon in B. county, under Section 613, Code of Civil Procedure.

5.  Where two of three causes of action alleged in a complaint were such that defendant was clearly entitled to a change of venue to the county in which he resided, plaintiff was not entitled to abridge such right by joining in the complaint a third cause of action which might be properly triable in the county where the suit was brought.

6   In an action against a master for medical services rendered a servant who was injured while performing his duties, it appeared that one W. telegraphed to defendant from the place where the injury occurred, asking whether defendant would pay the "doctor's bill." Defendant answered by wire to the sender of the former message. *Held* that, since W. initiated the correspondence, the telegraph company was his agent, and not that of defendant, and hence defendant's reply telegram delivered to the company for transmission was the original, for evidentiary purposes, and not the reply telegram delivered by the telegraph company to W.

7.  Where plaintiff relied on a telegram the burden was on him to prove the loss of the original, to authorize the admission of a copy.

8   Where an agent was authorized by a master to employ medical assistance for an injured servant, such agent had no authority to delegate to a physician employed authority to employ an assistant.

*Appeal from District Court, Beaverhead County;   M. H. Parker, Judge.*

Action by H. A. Bond against C. S. Hurd. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

*Mr. George E. Hurd,* for Appellant.

*Mr. W. S. Barbour,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

Appeal by defendant from a judgment in favor of plaintiff, and from an order refusing a motion for a new trial.

There are three causes of action stated in the complaint—one on account for medical services rendered by plaintiff, at the request of defendant, for the benefit of one William Walters; one on account for medical services rendered by Dr. Miller, at the request of defendant, for the benefit of one William Walters, and assigned to plaintiff; and one on account of labor performed by one Williams at the request of the defendant, assigned to plaintiff. An answer was filed to this complaint, practically denying all the allegations thereof. Defendant made a motion for a change of venue in accordance with the statute, within the proper time, which was overruled. The case was then tried before a jury (the defendant introducing no evidence), and resulted in a verdict and judgment for plaintiff, after which defendant made a motion for a new trial, which was overruled. The record on appeal consists of the judgment roll and bill of exceptions.

Counsel for respondent asks that the appeal be dismissed for two reasons, viz.: (1) Because appellant failed to file or serve his notice of intention to move for a new trial within ten days of the rendition and filing of the verdict; and (2) because "the record or statement on motion for a new trial does not contain anywhere any specifications of error of law or of fact, as required by Subdivision 3 of Section 1173 of the Code of Civil Procedure." There is no merit in this motion. The record dis-

closes that the verdict was returned and filed November 18, 1902; that the notice of intention to move for a new trial was served on November 24, 1902, and filed on November 25, 1902. The motion for a new trial was made upon a bill of exceptions and not upon a statement settled under Subdivision 3 of Section 1173 of the Code of Civil Procedure. This bill of exceptions was doubtless settled under the provisions of Section 1155 of the Code of Civil Procedure, as directed by Subdivision 2, Section 1173, Code of Civil Procedure. This section does not require a bill of exceptions to contain the specifications which are required by Subdivision 3 of Section 1173 of the Code of Civil Procedure to be inserted in a statement on motion for a new trial. The only specification required in bills of exceptions is: "When the exception is to the verdict or decision on the ground of the insufficiency of the evidence to justify it the objection must specify the particulars in which such evidence is alleged to be insufficient." (Section 1152, Code of Civil Procedure.) Again, the motion is to "dismiss the appeal," and the ground stated would not be cause for a dismissal of the appeal from the judgment, even if sufficient to warrant a dismissal of the appeal from the order refusing a new trial.

Appellant only specifies three errors in his brief: (1) The action of the court in denying appellant's motion for a change of venue; (2) in admitting in evidence a certain telegram; and (3) in denying appellant's motion for nonsuit as to respondent's second cause of action.

1. As to ruling on motion to change the place of trial: The affidavit on this motion discloses that summons was served at the town of Glasgow, Valley county, Montana, and that the defendant, at the time of the commencement of the suit and of such service, and at the time of filing the motion, was an actual, *bona fide* resident of the county of Valley, state of Montana; that the plaintiff, at the time of the commencement of the action and issuing of summons, resided in the county of Beaverhead, state of Montana. The suit was commenced in Beaverhead county. The question as to the right to a change of venue

under similar circumstances was before this court in the case of *McDonnell* v. *Collins,* 19 Mont. 372, 48 Pac. 549, where it was said: "We think this is an action of that character which Section 613, Code of Civil Procedure, requires to be brought in the county where the defendants, or some of them, reside at the commencement of the action, or where the plaintiff resides, and the defendants, or any of them, may be found. It is not disputed that both defendants resided in Cascade county at the time this action was commenced, and that they were both served with summons in this suit in Cascade county; nor is it claimed that either of them was found in Fergus county. We think, under the showing made by the defendants, that the court erred in refusing to change the venue of the case to Cascade county." Counsel for respondent, however, contends that "this suit was instituted for the collection for services performed in Beaverhead county. * * * There are three causes of action alleged in the complaint, and in each cause it is alleged that the services or contracts were to be performed, and were performed, in Beaverhead county. * * * All the services sued for were to be performed, and were necessarily performed, in Beaverhead county." Section 613, under which the case of *McDonnell* v. *Collins, supra,* was decided, in the latter part of the section, provides that "actions upon contracts may be tried in the county in which the contract was to have been performed." The first and second causes of action herein are unquestionably actions upon open account for the reasonable value of medical services rendered at the request of defendant, and not actions upon express contracts, as contemplated in Section 613, *supra,* at all. There may be some doubt as to whether the third cause of action is based upon express contract or open account. However, this is immaterial. The defendant was clearly entitled to a change of venue upon the first and second counts, and, under former decisions of this court, plaintiff cannot abridge this right by joining in the same complaint another cause of action which might be properly construed as triable in Beaverhead county. (*Yore* v. *Murphy,* 10 Mont. 304, 25 Pac. 1039; *Wallace* v.

*Owsley,* 11 Mont. 219, 27 Pac. 790; *Ah Fong* v. *Sternes,* 79 Cal. 30, 21 Pac. 381.)    The statute does not provide that actions for the recovery of money due for services may be tried in the county where the services are performed, but that an action on contract may be tried in the county "in which the contract was· to have been performed."    The case of *Oels* v. *Helena & Livingston Smelting & Reduction Co.,* 10 Mont. 524, 26 Pac. 1000, is not contrary to the above decision.

2.    As to the admission in evidence of the telegram:    The second cause of action was for medical services rendered by one Dr. Miller to one Walters, an employe of defendant, who had been sent to Beaverhead county to receive some of defendant's horses gathered by one Williams.    In moving these horses, Walters was thrown from one of them, and very seriously injured.    Plaintiff was called to attend Walters, and, finding him seriously injured, he called in Dr. Miller to assist him.    The record discloses that Williams telegraphed to defendant, after the injury occurred, to the effect that Walters was hurt—still unconscious—and asked him whether he would pay the "doctor's bill."    The admission of the answer of defendant to this telegram is the error alleged.    The court allowed plaintiff to introduce in evidence the copy of the telegram received by Williams from the telegraph office in Dillon, defendant having sent the message from Glasgow.    Defendant's attorney objected to its introduction on the ground that it was a copy, and not the original sent by defendant, and· that there was no such showing that the original could not be produced as would warrant the introduction of a copy.    The current authorities seem to be almost uniformly to the effect that whether the telegram filed with the telegraph company for transmission, or the one delivered by the telegraph company to the person addressed, after transmission, is the original, for the purpose of evidence, depends upon whether the telegraph company is the agent of the one sending the telegram, or the one to whom it is sent; that, if one initiates correspondence by telegraph, he selects the telegraph company as his agent, which agency continues throughout the correspond-

ence, and a telegram delivered to the company for transmission in reply to the one first sent is the original, for the purpose of evidence.  In this case the record discloses that A. G. Williams sent a telegram from Dillon to defendant at Glasgow, and defendant replied thereto.  Under the above rule, the message delivered by the defendant to the telegraph company at Glasgow for transmission to Williams at Dillon was the original for evidentiary purposes, and the one delivered by the telegraph company to Williams after its receipt in Dillon was but a copy. (*Durkee* v. *Vermont Cent. R. Co.,* 29 Vt. 127; *Anheuser-Busch Brew. Ass'n* v. *Hutmacher,* 127 Ill. 652, 21 N. E. 626, 4 L. R. A. 575; *Wilson* v. *Minneapolis & N. W. R. Co.,* 31 Minn. 481, 18 N. W. 291; *Saveland* v. *Green,* 40 Wis. 431; *Smith* v. *Easton,* 54 Md. 138, 39 Am. Rep. 355; *Howley* v. *Whipple,* 48 N. H. 487; Thompson on Electricity, Secs. 497, 502.)  Under the statutes of Montana, the burden was upon plaintiff to show that the original telegram was lost, before he should have been allowed to introduce secondary evidence of its contents. (Section 3228, Code of Civil Procedure.)  The record is barren of any such showing, and therefore we are of the opinion that the court erred in admitting it in evidence.

As to the motion for nonsuit on plaintiff's second cause of action:  This cause of action, as above stated, was on account of medical services rendered by Dr. Miller to one Walters in the employment of defendant, which account is alleged to have been assigned to plaintiff.  The record contains no evidence showing or tending to show the employment of Dr. Miller by defendant, or by any one as agent for him, duly authorized. The case seems to have been presented to the court below by plaintiff upon the theory that he (plaintiff) was employed by Williams, acting as the agent of defendant, and that Williams, as such agent, delegated to plaintiff authority to employ Dr. Miller as an assistant.  For the purpose of discussing the question under consideration, we shall consider the telegram sent to Williams by defendant as properly in the record, for the reason that plaintiff may upon another trial introduce the original, or

make proper proof to warrant the introduction of a copy. The only evidence in the record upon which agency could possibly rest is the telegrams passing between Williams and defendant— the telegram of Williams to defendant announcing that Walters had been hurt, and asking if he would pay the "doctor's bill," and defendant's telegram in reply, announcing that he would do so. Plaintiff saw this telegraphic answer of defendant, accepted the offer therein contained, and acted upon it. No direct authority is given Williams to employ a physician, so that any agency on the part of Williams was implied from the telegrams. However, no agency can be implied from these telegrams which would authorize Williams to delegate to plaintiff the right to engage the assistance of other physicians, and bind defendant to liquidate their charges. The agent's power to delegate authority is statutory in this state (Section 3140, Civil Code); and the testimony does not disclose that Williams lawfully delegated to plaintiff authority to employ Dr. Miller, as herein contended, within any of the provisions of this section.

The court below in overruling the motion for nonsuit based his ruling on the ground that an emergency arose which justified the employment of Miller. In our opinion, neither substituted agency nor emergency is sufficient to hold defendant liable for the charges of Dr. Miller. Presumptively, plaintiff, when he was employed, assumed that he was a competent physician, and capable of taking care of the case for which he was employed without assistance. If he concluded that assistance was required, before procuring the same it was his duty, if he desired to hold defendant liable for the payment of the bills of an assistant, to communicate with him and obtain his consent to the employment. He knew where defendant resided, and knew of the telegraphic correspondence between him and Williams, and could have communicated with him. If the plaintiff had the right to employ Miller and make the defendant liable for his services, he would have had a like right to employ as many other physicians as he might have deemed necessary, and compelled defendant to have paid them all.

There would be very grave doubt as to the liability of defendant to furnish to Walters medical assistance upon the facts disclosed in the record, aside from the above telegrams. The accident by which Walters was injured may have arisen from his own personal negligence, or from a direct violation of the instructions given him by defendant. The law is by no means settled that an employer is liable to furnish an employe with medical aid under all circumstances. Many courts of last resort have held that even a railroad company is not liable to furnish an employe with medical assistance in case of accident. There the work of the employe is at all times dangerous in its character, and the reason for holding the railroad company liable to furnish such medical assistance in case of accident is much stronger than it is where an individual employs another to perform a service which is not dangerous in itself.

After an investigation of authorities, we conclude that the holding of the Supreme Court of Indiana in matters of this character is the correct one, and should be followed. In the case of *Terre Haute & Indianapolis R. Co.* v. *McMurray,* 98 Ind. 358, 49 Am. Rep. 752, a brakeman on one of the defendant's trains was injured at a way station along the line of the road, distant many miles from the main offices of the railroad company. The conductor of the train employed McMurray as a physician and surgeon to attend the brakeman. The injury demanded immediate surgical attention, and the conductor informed McMurray that the railroad company would pay him for such services. The supreme court, by Justice Elliott, delivered a very elaborate and learned opinion on the question of the railroad's liability, and concluded that such an urgent necessity arose for the employment of the surgeon that the conductor had authority to bind the corporation by such employment. That court seems to place the liability on the ground of emergency and urgent necessity.

It appears from the case of *Terre Haute & Indianapolis R. R. Co.* v. *Brown,* 107 Ind. 336, 8 N. E. 218, that McMurray (plaintiff in the above case) employed Dr. Brown to assist him

in the care of the brakeman. McMurray said to the conductor that he would need assistance, and the conductor replied: "I have not time to attend to this matter at all. You secure what assistance is necessary to do this man good work, and do it, and the railroad company will pay you and your assistants for it, whatever is necessary—whatever it is worth." After the judgment in the case of McMurray was affirmed, Dr. Brown brought suit against the railroad company to recover his fees for services. The court says: "If it be conceded that such an overwhelming emergency might arise as would create a necessity for immediate action in order to save life or prevent great bodily suffering, and that under such circumstances a state of affairs might exist, in the presence of which one employe would have the implied power to bind the employer, in his absence, for necessary medical or surgical aid bestowed on another employe who sustained an injury, it by no means follows that the appellee was entitled to recover upon the facts in this case. If the emergency was such that we must assume that an imperious necessity existed, under which the conductor, from considerations of humanity, had authority to employ Dr. McMurray at the expense of the company, we cannot indulge the further presumption that it was necessary that he should have the power to authorize Dr. McMurray to employ other surgeons at the company's expense. Whatever authority the conductor had in that connection arose out of an implied agency, under which, owing to the peculiar circumstances under which he was placed, he might bind his principal by employing necessary surgical aid for the injured brakeman. No rule in the law of agency is better settled than that, where an agent has authority to do a particular thing, he must do it himself. He cannot, unless specially authorized, or in pursuance of some usage, delegate his authority to another. *Lyon* v. *Jerome,* 26 Wend. 485, 37 Am. Dec. 271; Story, Agency, Sec. 13. Assuming that the conductor, under the circumstances disclosed, had adequate authority to secure necessary surgical aid to attend the injured brakeman at the company's expense, it cannot be assumed that

he had authority to employ one surgeon, and authorize him to employ, at the company's expense, as many more as he should think necessary.   If the surgeon first employed found it necessary or convenient to call in other assistants, in order to accomplish that which he had been employed to do, in the absence of other employment than such as appears in this case, the assistants must look to him for compensation.   This is according to the well-settled rule that if an agent employs a subagent to do. the whole or any part of that which he was employed to do, without the knowledge or consent of his principal, inasmuch as there is no privity between the principal and the sub-agent, the latter will not be entitled to claim compensation from the principal."

The *Brown Case,* above quoted from, is much stronger than the case at bar.   We are satisfied that the record fails to show any such emergency as authorized the employment of Miller, or that Dr. Miller was employed by any one having competent authority to that end.

We have not been assisted by brief or argument or respondent's counsel on the last two propositions decided.

We advise that the judgment appealed from be reversed, and the cause remanded, with instructions to the district court to grant the motion for a change of the place of trial.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is reversed, and the case remanded, with instructions to grant the motion for a change of place of trial.

MR. JUSTICE MILBURN:   I concur, except as to the change of the place of trial.

*Reversed and remanded.*