FRASER, et al., Appellants, v. CLARK, et al., Respondents.

No. 9435.

Submitted June 28, 1954.   Decided July 8, 1954.

273 Pac. (2d) 105.

162

Messrs. Wood, Cooke, and Moulton, Billings, for appellants.
Mr. G. J. Jeffries, Roundup, and Mr. Howard C. Gee, Lewistown, for respondents.

Mr. Jeffries and Mr. Gee argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal from an order granting a change of venue.
On February 18, 1954, the plaintiffs, R. B. Fraser and Rosabelle Fraser, commenced this action in the district court of Yellowstone County, Montana, against the defendants, E. C. Clark and Evan Owens. At the time of filing their complaint plaintiffs caused summons and a writ of attachment to issue in the action.

The complaint is studiously vague, indefinite, ambiguous and uncertain. It contains little that in any wise or manner indicates to the court, trial or appellate, the proper county for the trial of the action.

The complaint, omitting its formal parts, reads:

"Complaint

"Plaintiffs complain of defendants and for cause of action allege:

"I. That heretofore plaintiffs and defendants made and entered into a certain contract in writing bearing date of December 30th, 1952, wherein and whereby the said defendants promised and agreed to pay to the plaintiffs, when certain title obligations were met by the plaintiffs, the principal amount of $28,500.00, and, in addition thereto promised and agreed to pay to the said plaintiffs, and on the 15th day of December, 1953, interest on the principal amount of $106,500.00 at the rate of 5% per annum from the 1st day of March, 1953;

"II. That the said plaintiffs have heretofore fully met and discharged their said title obligations, but that, nevertheless, the said defendants have failed and neglected to pay to the said plaintiffs the said principal amount of $28,500.00, or any part thereof, and, further, have failed and neglected to pay, on the said 15th day of December 1953, or at all, the said interest on the said principal amount of $106,500.00, and that there is now due and owing from the said defendants to the said plaintiffs herein, and wholly unpaid, the said principal amount of $28,-500.00, with interest thereon, and, in addition thereto, interest as aforesaid on the said principal amount of $106,500.00, and that payment of all thereof has been demanded.

"Wherefore, Plaintiffs pray judgment against the said defendants as follows, to-wit:

"For the principal amount of $28,500.00 with interest thereon, together with interest on the principal amount of $106,500.00 from the 1st day of March, 1953, and for plaintiffs' cost of suit herein incurred."

The allegations of the above complaint render little assistance in determining the particular county wherein the action should be tried.

The complaint states that the parties entered into a written contract but no copy of such instrument is set forth or attached nor does the complaint disclose where such contract was made

nor does it state the county or place in which such contract was or is to be performed by either plaintiffs or defendants. R. C. M. 1947, sec. 93-2904.

The complaint avers that in the contract defendants agreed to pay plaintiffs $28,500 and interest "when certain title obligations were met by the plaintiffs" but it fails to state what these "title obligations" were or where they were to be met or performed or whether the alleged "title obligations" involve the title to real property or the title to personal property, or whether the subject of the action and contract concerns an estate, right, title or interest in real property, in personal property or in either or both. Constitution of Montana, Art. VIII, sec. 11; R. C. M. 1947, secs. 93-320, 93-6203.

The complaint is completely silent as to the county in which the subject of the action or the property involved is situate. R. C. M. 1947, sec. 93-2901, subd. 1.

Not only does the complaint fail to disclose the nature and situs of the property involved but it is also silent as to the nature of the contract itself so that it is utterly impossible to ascertain from the complaint whether the contract sued upon is a contract for: 1) A commission claimed by a realtor on the sale of real estate; 2) a contract of title insurance on real property; 3) a contract for deed; 4) a contract for the sale and purchase of real property; 5) a mortgage contract on real property; 6) a conditional sale contract; 7) a promissory note, or 8) some other contract concerning "title obligations," rights, interests, estates, sales or transfers of property, real or personal.

The complaint also fails to disclose anything concerning the residence or whereabouts of any of the parties litigant. It does not aver that the county of defendants' residence is unknown to plaintiffs nor does it state that either defendant may be about to depart from the state. R. C. M. 1947, sec. 93-2904.

On February 20, 1954, the defendants were personally served in Fergus County, Montana, with the summons so issued in the action, said county being the county in which the defendants then, and at the time of the commencement of the action, resided.

Also on February 20, 1954, the sheriff of Fergus County, assuming to act pursuant to the authority conferred by the writ of attachment so issued in the action, attached and levied upon personal property of the defendants of the approximate value of $80,000, all located in Fergus County and consisting of ranch machinery and equipment, motor trucks, automobiles, saddle horses, and 390 head of thoroughbred Hereford cattle.

On March 3, 1954, the defendants made their general appearance in the action by interposing a general demurrer to plaintiffs' complaint, at which time defendants also filed an affidavit of merits,—a demand for a change of place of trial of the action to Fergus County, Montana,—a written motion and a notice of motion for change of place of trial and an affidavit by the defendant E. C. Clark in support of such demand and motion all in compliance with the requirements of R. C. M. 1947, sec. 93-2905.

Defendants' motion for change of place of trial to Fergus County was made upon the grounds, *inter alia:*

"That the defendants do not, nor do either of them reside in the County of Yellowstone, Montana, each thereof being residents of the County of Fergus, Montana, and that they were such residents at all of the times herein mentioned; that * * * process herein was served upon them in said County of Fergus;

"That said action involves a purchase and sale contract of real property, all of which is situate in the said County of Fergus; that said contract of purchase and sale * * * upon which this action is based, was signed in the County of Fergus; that the testimony which will be adduced by and on behalf of the defendants herein will involve a large number of public records in said county of Fergus, also testimony of the general location, topography and characteristics of the lands involved; and that a large number of resident witnesses in said county conversant with the facts, will be necessary to adequately and properly submit the defense of the defendants herein; that if a change of place of trial be not granted, great hardship, inconvenience and expense will necessarily be incurred; and that the defendants will be unable

to submit their complete defense herein, in that the public records in said county can not be removed therefrom and would not be available in a trial of this proceeding in Yellowstone County.''

The affidavit of the defendant, E. C. Clark, in support of defendants' motion for change of place of trial, *inter alia*, recites:

''That the defendants herein are now and at all times during their residence in the State of Montana, have been residents of Fergus County, Montana, and that * * * process herein was served upon them in said County.

''That prior to and on the 30th day of December 1952, after extended negotiations in Fergus County, Montana, the parties hereto entered into a certain Contract for the purchase of land and premises situate in Fergus County, Montana, consisting of two fenced and enclosed ranches, consisting of deeded and leased lands and located about fifteen miles apart, commonly known and designated as the Home Ranch and the North Ranch; * * *

''That at said time as in said contract recited Defendants duly delivered Plaintiffs, 'The $15,000 earnest money payment held in escrow to be turned to R. B. Fraser as soon as he shows good title to the land. The rest of the down payment of $28,500 to be paid to Mr. Fraser after purchaser's attorney has had opportunity to check the legal papers.'

''That possession of said premises so contracted to be sold was to be delivered Defendants, the purchasers, the 1st day of April, 1953; that said Plaintiffs failed and refused so to do * * *.

''That * * * on the 20th day of February, 1953, an Abstract for part of the lands embraced in and constituting the Home Ranch, commonly known and described as the Moulton Ranch, was received by Defendants' Counsel in Lewistown, Montana, that while ordered and compiled, Abstracts of Title for a large part of the lands therein, due to failure to pay the cost thereof, were never delivered Defendants or their Attorney for examination, and that no Abstracts for a substantial part of the lands contracted to be sold the Defendants representing said Home or

Moulton Ranch have ever been submitted Defendants or their Attorney for examination, that no Abstracts of Title for any of the lands embraced in and representing the North Ranch have ever been submitted Defendants or their Attorney for examination. * * *

"That a Policy of Title Insurance, allegedly for said lands, was submitted Defendants' Attorney in Lewistown, Montana, on January 12, 1954, that Defendants were thereafter so advised by letter, * * * that by letter from Defendants' Attorney dated February 15, 1954, * * *. Defendants were advised, 'Abstracts of Title to the main Moulton Ranch have been delivered and examined and reported on, a quiet title action as to the remainder of the land is, in a sense, obviated with the presentation, of which I notified you of title insurance', * * * that these Defendants did not receive and have never received said Policy of Title Insurance and have never been advised by anyone of the purport thereof and what titles were in fact thereby guaranteed, if any.

"That at the time said Abstract of Title was examined and reported upon and at the time said Title Insurance Policy was delivered Defendants' Attorney for examination, the Plaintiffs did not and have not at any time surrendered or tendered any conveyance, assignment, lease or any instrument or instruments what-so-ever to Defendants or to anyone in their behalf, or at all, evidencing in any manner accruing or any accrued rights by reason of said earnest money of $15,000.00 theretofore placed in escrow, or at all.

"That the Plaintiffs have wholly failed and refused to make or tender any conveyance, evidencing any accrued or accruing rights of the Defendants in the premises.

"That pursuant to and in accordance with the expressed terms and provisions of said Contract Plaintiffs purported to sell and contracted to sell and to convey to Defendants in what is known as the Home or Moulton Ranch, 2680 acres of deeded lands and leasehold interest in 1280 acres of leased lands used in connection therewith, that a substantial part thereof is south of the Railroad and at said time was enclosed in one large

pasture by suitable and appropriate fences, that included in said leased lands were 320 acres on the east side thereof allegedly leased by Plaintiffs for taxes thereon, that Plaintiffs duly represented that said lease was a valid and subsisting lease and that Defendants would succeed to a valid leasehold interest therein, but that contrary to Plaintiffs' representations, Plaintiffs had wholly failed and refused to pay the annual accrued taxes thereon, the alleged rental therefor and that at said time Plaintiffs in fact had no right, title, claim or interest therein or thereto, all of which Plaintiffs at said times knew that the said Defendants relied and acted upon said false representations and were thereby deceived and misled.

"That Plaintiffs further represented that they had and held approximately 640 acres on the west side of said pasture duly enclosed therein under valid lease, that at said time Plaintiffs had no right, title, claim or interest therein which Plaintiffs at said time well knew, that Defendants herein relied upon said false representations and were misled thereby, and that no interest in said lands accrued by or under said Contract of Sale, that in truth and in fact at the time said Contract of Sale was entered into and Plaintiffs contracted to sell Defendants valid leasehold interest in said pasture of 1260 acres in said Home or Moulton Ranch, Plaintiffs in fact controlled but 320 acres held under grazing permits in the Grass Range Grazing District.

"That all of the lands comprising said north ranch, both leased and owned, were at the time said Contract was entered into enclosed in one large pasture by suitable and appropriate fences; that the said Plaintiffs at all times represented they controlled by ownership or by lease all of the acreage embraced in said pasture, namely 3700 acres, 1500 acres of which were deeded lands; that said Ranch is located a long distance from said Home or Moulton Ranch, and is located in an isolated semi-arid territory, that there is no living water thereon for livestock or domestic use, or at all; that there is situate within said pasture and enclosure one large reservoir into which the major run-off in that entire territory flows and which is of a general lasting

character; that the same has and does supply water for live-stock and other purposes, and was and is the only dependable lasting source of water within said pasture for livestock or for other uses; and, that said pasture without said reservoir is in effect useless; that said Plaintiffs specifically and repeatedly and at all times represented said reservoir was upon their deeded lands and that they were exclusive owners thereof; that said representations were known to be false and that Defendants relied thereon and were thereby misled, that while said reservoir was and is within said enclosures, the same was not on any lands, then, or at all, leased or owned by Plaintiffs and that Plaintiffs do not now, and have never, owned or had any interest in or claim to the same in that as said reservoir is and was at all times situate upon and within lands owned by the United States Government and so enclosed by said pasture fences; that said pasture cannot successfully be utilized for grazing purposes or at all without the use of said reservoir and without the owner-ship and control thereof and that said lands comprising said north pasture are and were of but nominal, if any, material value; that by reason of the facts hereinbefore set forth there has been and is a complete failure of consideration of the pur-ported sale of said lands to the Defendants herein; that en-gineering data is now being actively assembled to accurately establish the location and boundaries of said lands Plaintiffs so contracted to sell Defendants herein, and particularly the location of the reservoir aforesaid.

"That this entire Contract and transaction involves the sale of real properties situated exclusively in Fergus County, Mon-tana, and that to duly advise the Court of the condition of said lands, of the general and material conditions vitally affecting the respective interests of the parties hereto, the testimony of a large number of witnesses, residents of Fergus County, Mon-tana, conversant with the facts, will be necessary, and that many of the Public Records in Fergus County, Montana, will be neces-sary and pertinent in the consideration and determination of the issues in this cause, and that unless the place of trial of

170

said action be changed to Fergus County, Montana, great hardship, inconvenience and unnecessary expense will have been sustained by the Defendants in submitting their defense herein, if a change of venue be not granted, the Defendants cannot fully present their defense herein, a substantial part of which will consist of Public Records in Fergus County, Montana.

"That in addition to the Contract aforesaid and on the 12th day of May, 1953, in Fergus County, Montana, at a meeting attended by Plaintiff, Fraser, in the Office of their said Attorney, the Defendants herein signed and placed in escrow with their said Attorney, a tentative, but incomplete Contract, together with Defendants' check in the sum of $28,500.00 payable to the order of Plaintiffs, that the description of said property was incomplete and that the same did not cover all of the lands and premises embraced within the fences on the said Home or Moulton Ranch or on the said North Ranch, and that as Defendants then understood, and now understand, omitted a large and substantial part of the acreage Plaintiffs had theretofore contracted to sell the Defendants; that said Defendants signed said Contract and said check all with the specific and express understanding that the same would at all times be held by their Attorney pending their further and specific directions and instructions, * * * that not-with-standing said Contract was made the 12th day of May, 1953, the same bears the date of December 30, 1952.

"That thereafter the Defendants herein received a communication from the said Escrow Agent through the United States Mails, dated November 25, 1953, enclosing therewith a copy of a letter from the Plaintiffs, dated November 19, 1953, * * * that at said time the said Defendants had received but one Abstract of Title for a part of said Home or Moulton Ranch lands and no Title Insurance Policy in lieu of any Abstracts of Title had been submitted them or to anyone in their behalf; that thereafter the Defendants, * * * received * *.* a written communication dated January 12, 1954, from their Attorney in Lewistown, Montana, wherein they were advised,

"'Mr. Frazer came in this morning and handed me a title

insurance policy for lands that we had pointed out to you would require an action to quiet title, unless of course that Frazer availed himself of provisions of the contract but in lieu of abstract of title, he could furnish title insurance * * *.

" 'Now, of course, he is in the position of having demonstrated that he has the title to those lands and is in a position to demand his money.' * * *

"That Defendants herein at said time were not and have never been advised whether said policy covered all of the lands to be conveyed with said Home or Moulton Ranch, or any of the land embraced within said North pasture, title to all of which plaintiffs had only contracted to assign, transfer and convey to the Defendants herein. * * *

"That the Defendants herein were not at any time advised that the Abstracts of Title and the Title Insurance Policy guaranteed and assured Plaintiffs good and merchantable title to the lands contracted to be sold them by the Plaintiffs in this case or if the same covered and included all of the lands so contracted to be sold; that these Defendants are specifically advised that the same does not assure good and merchantable title to all of said lands or any title whatever to a material part thereof as herein more fully set forth.

"That the Defendants herein did not directly or indirectly or at any time authorize, empower or direct the delivery or surrender of said Contract * * * so held in escrow by Defendants, but that the same, or a copy thereof, contrary to and in violation of Defendants' expressed and specific instructions, was surrendered Plaintiffs or Plaintiffs' Agents and that not-with-standing said tentative Contract has never been released from said escrow, this action is based thereon, and that a letter of instructions from the Plaintiffs quoted verbatim therefrom was served upon the Defendants by the Sheriff of Fergus County, Montana, as a part of, and at the time process herein was served on Defendant, Clark, * * *.

"That according to the terms and provisions of said Contract, * * * or otherwise, no part of said contract price was at any

time or is now due or owing the Plaintiffs; that Plaintiffs have breached said Contract in that earnest money has not been held in escrow as * * * provided, but that the same has been converted to Plaintiffs' own use and benefit in that they have reduced said check to a cashiers check in the Security Trust and Savings Bank of Billings, Montana, issued in the name of one Roseberry and Plaintiff Fraser, which said check is now presently held by said Security Trust and Savings Bank.''

On March 12, 1954, the plaintiff R. B. Fraser filed his certain affidavit resisting defendants' motion for change of venue and in opposition to the above quoted affidavit of the defendant E. C. Clark. The plaintiff Fraser's affidavit recites:

''R. B. Fraser, of lawful age, being first duly sworn, on his oath deposes and says:

''That he is one of the plaintiffs in the above entitled action and makes this affidavit for and on behalf of both of the plaintiffs in said action; that, at all of the times hereinafter mentioned, the above named plaintiff, Rosabelle Fraser, was ever since has been and now is the wife of deponent, and that at the time of the commencement of the above entitled action and likewise at the time of the. making of the contract sued upon herein, the said plaintiffs, and each of them, resided, and still reside, in Billings, in the County of Yellowstone, State of Montana; that the said contract so sued upon herein does not designate the place of payment of the money obligations designated therein to be discharged by the defendants; that at no time heretofore have the said defendants, or either of them, sought the plaintiffs herein for the purpose of making the required payments under the aforesaid contract;

''That this affidavit is made in resistance of the motion of the defendants for a change of place of trial of the said action from the County of Yellowstone, State of Montana, to the County of Fergus, State of Montana;

''Further deponent sayeth not.''

The affidavit of the defendant E. C. Clark and that of the plaintiff R. B. Fraser stand in the record wholly uncon-

tradicted, hence the statements of fact therein set forth must be taken as true. See 56 Am. Jur., Venue, sec. 66, p. 67, note 3.

On April 1, 1954, following a hearing, oral argument by counsel and the filing of briefs on behalf of the respective parties, the district court of Yellowstone County, made and caused to be entered an order granting defendants' motion for change of place of trial to Fergus County, Montana, from which order the plaintiffs immediately perfected this appeal thereby staying and suspending the carrying out of such order and preventing a transfer to the district court of Fergus County of the pleadings, papers, files and record in the action.

On May 29, 1954, plaintiffs caused to be filed in the office of the clerk of the supreme court the transcript on appeal herein.

On June 9, 1954, defendants filed herein a duly verified petition challenging the adequacy and sufficiency of the undertaking on attachment furnished by plaintiffs and seeking to have this court issue an order to dissolve and discharge the attachment and levy so made on defendants' personal property, the defendants representing: That by their action so commenced in Yellowstone County, the plaintiffs seek to recover of defendants certain sums deposited in escrow and alleged to be due under a contract of sale and purchase and for deed to real property situate in Fergus County, Montana; that said contract has been rescinded; that the defendants E. C. Clark and Evan Owens, have filed suit in the district court of Fergus County, Montana, against said R. B. Fraser and The Security Trust and Savings Bank, a corporation, seeking the cancellation of said contract and for the recovery of $15,000 earnest money theretofore advanced by said E. C. Clark and Evan Owens in connection therewith, which action is now pending in said district court of Fergus County.

The defendants further depose that the sheriff of Fergus County had attached and levied upon defendants' personal property and that continuously since February 20, 1954, such officer has held under such levy and attachment in Fergus County, defendants' ranch machinery and equipment including

their motor trucks and automobiles and also 9 head of saddle horses, 390 head of older Hereford cattle and their offspring including some 180 spring calves.

Defendants further depose that plaintiffs have failed to make suitable, adequate or any provision for the care of defendants' livestock which is now being grazed and run upon a pasture comprising but about 2,000 acres in Fergus County, Montana; that said pasture is inadequate to properly graze said livestock; that the official bond of said sheriff and the undertaking on attachment filed by plaintiffs herein, each is only in the sum of $10,000 and that such bonds are wholly inadequate to protect and indemnify defendants for the damages which they have sustained or which they may sustain in the future by reason of such attachment and levy; that such attachment was and is wrongful, grossly excessive and an abuse of process in that defendants' personal property and livestock of the approximate value of $80,000.00 are now held by the sheriff of Fergus County under such attachment and at the instance of plaintiffs for a claimed indebtedness of $28,500 together with interest on an escrow contract for deed to certain described real property all situate in Fergus County, Montana.

On June 7, 1954, plaintiffs filed in this court written objections, challenging the jurisdiction of this court to consider or determine defendants' motion to dissolve the attachment herein, contending that by virtue of the provisions of R. C. M. 1947, sec. 93-8011, the district court of Yellowstone County, which made the order for change of the place of trial alone has jurisdiction of the matters involved in defendants' motion to dissolve the attachment and that such matters are not affected by the order for change of place of trial to Fergus County from which order this appeal was taken.

We find no merit in the contention. As a general rule the effect of a change of venue is to remove the cause absolutely from the jurisdiction of the court awarding the change. The statute provides: "The court to which an action or proceeding is transferred has and exercises over the same

the like jurisdiction as if it had been originally commenced therein." R. C. M. 1947, sec. 93-2908.

In 56 Am. Jur., Venue, sec. 78, p. 79, it is said: "A change of venue not only absolutely divests the court from which the cause was removed of jurisdiction, but it also clothes the court to which removal is had with the same jurisdiction that reposed prior to the change in the court of original venue. Thereafter, the cause appertains and belongs exclusively to the court to which the order is directed. That court, by virtue of the change of venue, is invested with complete control and authority over the subject matter in dispute, and its jurisdiction and power cannot be ousted or destroyed by the improper interference of any other tribunal. It may render any judgment which might have been rendered by the court in which the case originated. However, it cannot exercise the jurisdiction with which it is vested, so as to adjudicate upon the rights of the parties litigant, until such a transcript of the record and proceedings is filed as is required by the statute."

The immediate perfecting of the appeal to this court stayed further proceedings in the district court of Yellowstone County, R. C. M. 1947, sec. 93-8011, and it stayed the carrying out of the order changing the place of trial, thus preventing the actual physical transfer to the district court of Fergus County of the pleadings, papers, files and record of the proceedings had and done in Yellowstone County so that, pending a determination of this appeal, the district court of Fergus County was and is powerless to exercise the jurisdiction with which it would have been vested by the order granting the change of venue had there been no appeal from such order.

While section 93-8011, supra, apparently attempts to authorize the district court of Yellowstone County to "proceed upon any other matter embraced in the action, and not affected by the order appealed from" we fail to see how the change of venue order which ordinarily not only absolutely divests the district court of Yellowstone County of jurisdiction but also clothes the district court of Fergus County with the same jurisdiction that

originally reposed in the court where the action was commenced, sec. 93-2908, supra, leaves "any other matter embraced in the action, and not affected by the order appealed from" for the court in Yellowstone County to hear, consider or otherwise act upon pending a determination of this appeal other than the duties incident to signing, approving and settling bills of exceptions, fixing and passing upon appeal and supersedeas bonds, certifying to the transcript on appeal and performing other duties in connection with the preparation and placing before the supreme court the exhibits, papers and record required on the appeal. The taking and perfecting of a proper and timely appeal invested the supreme court with jurisdiction not only to hear and determine the appeal but also to hear, determine and act upon any incidental matters arising while the appeal is here pending that may ultimately affect the rights of the parties litigant. Compare Finlen v. Heinze, 27 Mont. 107, 120, 69 Pac. 829, 70 Pac. 517; Stewart v. First Nat. Bank & Trust Co., 93 Mont. 390, 394, 18 Pac. (2d) 801, 802.

The sole question for determination on the appeal proper is whether, upon the plaintiffs' complaint and the affidavits before the district judge on the motion for change of place of trial, it was error for Judge Derry to make his order of April 1, 1954, changing the place of trial to Fergus County, Montana.

In the absence of express constitutional restriction the legislature has the power to designate the county in which various actions may or shall be tried.

In Montana the venue of civil actions and proceedings is regulated by both constitutional and statutory provisions. The Constitution of Montana provides: "The district courts shall have original jurisdiction in all cases at law and in equity, including all cases which involved the title or right of possession of real property * * * and in all cases in which the debt, damage, claim or demand, exclusive of interest, or the value of the property in controversy exceeds fifty dollars * * *. Their process shall extend to all parts of the state, provided that all actions for the recovery of, the possession of, quieting the title to, or

for the enforcement of liens upon real property, shall be commenced in the county in which the real property, or any part thereof, affected by such action or actions, is situated. * * *''
Article VIII, sec. 11.

*General Rule.* The general rule governing venue in civil actions is that the action shall be tried in the county in which the defendants reside at the commencement of the action. Hardenburgh v. Hardenburgh, 115 Mont. 469, 473, 146 Pac. (2d) 151. Compare R. C. M. 1947, sec. 93-2904 and 67 C. J., Venue, sec. 27, p. 24, notes 5-10 and sec. 30, pp. 27, 28, notes 49-55, 62 and 77.

The statutes of Montana regulating venue in civil actions provide either (1) for the application of the above general rule or (2) for the application of an enumerated exception to such rule.

Sections 93-320, 93-2901, 93-2902, 93-2903 and 93-6203, R. C. M. 1947, enumerate certain exceptions to the above general rule.

R. C. M. 1947, sec. 93-320, provides, ''that all actions for the recovery of the possession of, quieting the title to, or the enforcement of liens upon real property, must be commenced in the county in which the real property, or any part thereof, affected by such action or actions, is situated.''

R. C. M. 1947, sec. 93-2901, in part, provides:

''Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial as provided in this code:

''1. For the recovery of real property, or of an estate or an interest therein, or for the determination, in any form, of such right or interest, and for injuries to real property.''

R. C. M. 1947, sec. 93-6203, relating to parties and venue in actions to quiet title to real estate provides: ''All actions brought under this section must be brought in the county in which the real estate, or a portion thereof, as to which the title is sought to be quieted, is situated, provided, that if the said real estate

is situated in more than one county, said action may be brought and prosecuted in either of said counties * * *."

The phrase "subject of the action" as used in subdivision 1 ██ of sec. 93-2901, supra is not synonymous with the term "cause of action" nor with the term " 'object of the action' ". Compare Archer v. Musick, 147 Neb. 1018, 25 N. W. (2d) 908, 914, 168 A. L. R. 1164, 1176; Mobley v. Bland Co., 200 S. C. 448, 21 S. E. (2d) 22, 26.

In Pomeroy's Code Remedies, 5th Ed., sec. 651, pp. 1057-1059, the author suggests that it would be correct to say "that the 'subject of the action' is the plaintiff's main *primary right*, which has been broken, and by means of whose breach a remedial right arises. * * * The primary right * * * always exists and is always the very central element of the controversy around which all the other elements are grouped, and to which they are subordinate. * * * It seems, therefore, more in accordance with the nature of actions and more in harmony with the language of the statute to regard the 'subject of the action' as denoting the plaintiffs' *principal primary right* to enforce or maintain which the action is brought, than to regard it as denoting the specific thing in regard to which the legal controversy is carried on."

Here the subject of the action is the plaintiffs' principal primary right to enforce, maintain and assert in court their right to have, receive and compel the delivery to them of the sums which defendants theretofore deposited in Fergus County with the escrow agent there residing to be credited and applied on the purchase price of the real property, all situate in Fergus County, but only if and when the plaintiffs be in a position to convey and deliver to defendants merchantable title to the real property which plaintiffs had contracted to sell and defendants had contracted to purchase.

It is the policy of the law of this jurisdiction that all transactions affecting the title to real property shall be matters of record in the county wherein the real property is situate to the end that those concerned may then ascertain the condition of such title by an examination of the public records of the par-

ticular county wherein such real property is located. Compare Seymour v. La Furgey, 47 Wash. 450, 92 Pac. 267; Ryckman v. Johnson, 190 Wash. 294, 67 Pac. (2d) 927.

If this action is not of a class for which provision is made in secs. 93-320, 93-2901, 93-2902, 93-2903 or 93-6203 then it does not come within any class of actions enumerated in any of the statutory exceptions to the general rule in which case the proper county for the trial is to be determined under the provisions of sec. 93-2904 which apply "In all other cases".

Section 93-2904, supra, is composed of two sentences. The first sentence is made up of five clauses. Such first sentence has a main clause and four subordinate clauses.

The main clause is an enactment of the general rule, above referred to, for determining venue.

The main clause provides: "In all other cases the action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action."

The second clause supplies the first alternative for the general rule by providing, "or where the plaintiff resides, *and* the defendants, or any of them, may be found". (This simply means that as a second alternative plaintiff may have his action tried in the county where he resides *and* wherein one or more of the defendants *may be found,* even though no defendant resides in such county.)

The third clause supplies a second alternative for the general rule by providing "or, if none of the defendants reside in the state * * * the same [action] may be tried in any county which the plaintiff may designate in his complaint". (This alternative is available when *none* of the defendants reside in Montana and the plaintiff designates in his complaint a county for the trial of the action.)

The fourth clause supplies a third alternative for the general rule by providing "or, if residing in the state, the county in which they so reside be unknown to plaintiff, the same [action] may be tried in any county which the plaintiff may designate in his complaint". (This alternative is available when the

defendant may be residing in the state but the county wherein he resides is unknown to the plaintiff who then designates in his complaint a county for the trial of his action.)

The fifth clause supplies a fourth alternative for the general rule by providing "and if any defendant or defendants may be about to depart from the state, such action may be tried in any county where either of the parties may reside, or service be had." (This alternative is available whenever any defendant may be about to depart from Montana in which event plaintiff may have his action tried in any county where either the plaintiff or the defendant may reside or in any county where service of process may be had upon the defendant.)

Notwithstanding the four subordinate clauses, the main clause of the first sentence of sec. 93-2904 contemplates that ordinarily and when possible the action shall be tried in the county in which the defendants reside at the commencement of the action, the four subordinate clauses simply setting forth circumstances under which exceptions and departures from the general rule are permitted. Thus does the statute make the place of defendants' residence at the commencement of the action the first and foremost factor in determining the venue.

In the instant case the defendants were residing in Fergus county at the commencement of the action as the plaintiffs well knew and there service was made upon defendants by the sheriff of that county. Under these facts the main clause of the first sentence of sec. 93-2904 applies and Fergus County is the proper county for the trial of the action.

In Bancroft's Code Pleading, Practice and Remedies, Vol. III of Ten Year Supplement, sec. 992, pp. 1810-1812, it is said:

"In accordance with statute, a defendant is entitled to have an action against him tried in the county of his residence, except as otherwise specified by statute. It is the defendant's residence at the time of the commencement of the action that is controlling.

"There are statutory exceptions to the rule in case of defendants about to depart from the state, and of a certain class

of actions by a designated state officer to collect money owing the state. * * *

"In California, where the causes upon which the plaintiff seeks relief are both transitory and local, the defendant is entitled to have the venue changed to the county of his residence. A similar rule prevails in Montana under a statutory provision like that in force in California."

In McKinney v. Mires, 1933, 95 Mont. 191, 26 Pac. (2d) 169, 172, the plaintiff Peter McKinney commenced suit in Silver Bow County, Montana, seeking an injunction and an accounting. The complaint alleged: that the plaintiff McKinney, a resident of Idaho,—the defendant Roy Mires, a resident of California and the defendant Nelson Story, Jr., a resident of Gallatin County, Montana, at and in Madison County, Montana, entered into a contract of partnership and joint adventure for dredging lands owned by Story and situate in Madison County, Montana; that pursuant to such contract plaintiff expended time and money on the project; that a dredge was secured in California and installed on the property in Madison County and that thereafter Story and Mires excluded plaintiff from participating in the adventure and that they incorporated the Story Dredging Company, a corporation, having its principal place of business in Gallatin County, to which corporation they transferred all the rights of the partnership. The defendant Roy Mires was found and served with summons in Madison County while the defendants Story Gold Dredging Company and the two administrators of the Story estate were served with summons in Gallatin County, Montana, wherein they resided at the commencement of the action. The defendants made timely demand for change of place of trial from Silver Bow County to Gallatin County. This court held that Gallatin County was the proper county for the trial and, *inter alia,* said:

"Mires, a nonresident, was found and served in Madison county, and, under the statute, in the absence of other defendants, the cause should have been tried there.

"The Story Dredging Company has its residence in Gallatin county, but it stands only in the position of a stakeholder, * * *.

"The remaining defendants, the administrators of the estate of Nelson Story, Jr., deceased, stand in a peculiar position. * * *

"Had the plaintiff not asked for the accounting, these defendants might be in the same situation as the Story Dredging Company, but he does ask for an accounting, which is perhaps necessary in order that the court may do full justice and render judgment disposing of the entire controversy. It follows that these defendants, residing and served with summons in Gallatin county, were entitled to have the cause removed to that county on their demand."

In Heinecke v. Scott, 1933, 95 Mont. 200, 26 Pac. (2d) 167, 168, the plaintiff Fred Heinecke of Helena, commenced suit in Lewis and Clark County, Montana, against L. G. Scott, his wife Celeste Scott and Thomas and Ellen Mulvihill. The complaint alleged that Heinecke is owner of certain described land in Stillwater County; that a written contract was entered into in Lewis and Clark County for the sale by one A. C. Johnson, vendor, to Scott, vendee, of a parcel of land situate in Stillwater County; that payments on the purchase price were by the contract payable and that they were actually paid in Lewis and Clark County; that at the time the contract was made a deed, to Scott, was executed and deposited in escrow in Lewis and Clark County to be delivered to Scott upon the payment of the full purchase price; that by mistake in drafting both the contract of sale and the deed, the plaintiff Heinecke's property was included but that plaintiff's property was not purchased by the defendant Scott nor was it intended to be purchased by him; that when Scott paid the full purchase price called for by the contract, the deed, until then held in escrow, was delivered to Scott in Lewis and Clark County and was by Scott placed of record in Stillwater County and that thereafter Scott and his wife conveyed the property including the lands claimed by the plaintiff Heinecke to the defendants Mulvihill. The plaintiff sought to have the deed to Scott reformed so as to eliminate plaintiff's claimed

property therefrom; to have the deed from the defendants Scott to the defendants Mulvihill cancelled and to have the Mulvihills and the Scotts enjoined from asserting any claim or title to the property claimed by plaintiff. At the time of the commencement of the action the defendants were residents of Stillwater County wherein they were served with summons. On timely demand of the defendants the district court of Lewis and Clark County ordered the cause transferred to Stillwater County for trial. This court affirmed the order granting change of place of trial to Stillwater County and said:

"Defendants contend, and the court found, that the action is one affecting title to real estate, and that it must be tried in the county where the property is situated. * * *

"We agree with the trial court that the action is one governed by section 9093 [now R. C. M. 1947, sec. 93-2901, subd. 1] * * *.

"In part, at least, the action is one to remove a cloud on title. * * * It * * * must be tried in the county where the property is situated (section 9479, supra; section 8831, Rev. Codes 1921 [now R. C. M. 1947, secs. 93-6203 and 93-320]; section 11, art. 8, Constitution). * * *

"And it has been held under a statute identical with our section 9093 that an action to set aside a sale of real estate on the ground of fraud must be tried in the county where the real estate is situated. (Citing cases.) The case of Zane v. Vawter, 102 Kan. 887, 172 Pac. 37, reaches a contrary conclusion in part, but even in it the court said: 'So far as the relief sought is the setting aside of the deed, * * * the action is local.' In that case it was held that, since the complaint asked for such equitable relief as plaintiff was entitled to, and since under the complaint the defendant could be compelled to execute a deed to plaintiff, the action was *in personam* and not *in rem*. That case is not controlling here, for in this state, contrary to the holding in the Zane Case, if the complaint contains more than one cause of action, on one of which defendant is entitled to a change of venue, the motion must be granted, though the cause or causes

of action may be properly triable where the action was commenced. (Citing cases.)

"Were we to concede that as to defendants L. G. and Celeste J. Scott the action is one which may properly be tried in Lewis and Clark county, and were we to hold that as to them the action is transitory and not local, yet this would not be ground for denying to defendants Mulvihill their right to have the action tried in the county of their residence and where all the defendants reside, since there is no allegation in the complaint that defendants Mulvihill committed any tort in Lewis and Clark county. Under such circumstances they are entitled to have the action tried in the county of their residence. Brown v. Happy Valley Fruit Growers, 206 Cal. 515, 274 Pac. 977."

Heinecke v. Scott, supra, and Hardenburgh v. Hardenburgh, supra, both cite with approval the California case of Brown v. Happy Valley Fruit Growers, supra, and the Montana cases of Yore v. Murphy, 10 Mont. 304, 25 Pac. 1039 and Bond v. Hurd, 31 Mont. 314, 78 Pac. 579, 3 Ann. Cas. 566.

In Brown v. Happy Valley Fruit Growers, supra, the California court said [206 Cal. 515, 274 Pac. 979] : "The right of a defendant to have an action brought against him tried in the county in which he has his residence is an ancient and valuable right, which has always been safeguarded by statute and is supported by a long line of judicial decisions."

In Yore v. Murphy, supra [10 Mont. 304, 25 Pac. 1040], this court, in considering the statutes governing venue in actions upon contract and actions for tort, observed that if the action were in contract, "it seems that the face of the contract must disclose that it was to be performed in the county in which the action was commenced, in order to lay and retain the venue in that county."

The second sentence of sec. 93-2904 provides: "Actions upon contracts *may* be tried in the county in which the contract was to be performed, and actions for torts in the county where the tort was committed; subject, however, to the power of the court

to change the place of trial as provided in this code." Emphasis supplied.

The language "the county in which the contract is to be performed," refers only to contracts which, by their terms, indicate they were to be performed in a particular county. Lamar Alfalfa Milling Co. v. Bishop, 80 Colo. 369, 250 Pac. 689, 690. Such language does not apply to contracts which wholly fail to show or indicate any place of performance.

In the instant case the plaintiff R. B. Fraser in his uncontradicted affidavit swore "that the said contract so sued upon herein does not designate the place of payment of the money obligations designated therein to be discharged by the defendants." Hence it is clear that under the plain language of the second sentence of sec. 93-2904 that the indefinite contract here sued upon does not come within the provisions of said sentence.

The above is in accord with the construction generally given ▆▆▆▆ like or similar statutes as appears in 56 Am. Jur., Venue, sec. 35, pp. 39, 40, wherein it is said: "Provision is frequently made for the bringing of actions upon contract in the county wherein the contract was to be performed. Where such a provision is in the nature of an exception to a general requirement that an action be tried in the county of the defendant's residence, it is construed to be applicable only when the contract is by its express terms to be performed in a particular county."

We subscribe to this statement of the law and consider the provisions of the second sentence of sec. 93-2904 insofar as same relate to actions upon contracts to be in the nature of an exception to the general rule enacted in the main clause of the first sentence of sec. 93-2904 providing generally that actions be tried in the county of the defendant's residence.

The provisions contained in R. C. M. 1947, sec. 93-2904 have been the law of this jurisdiction for many years. The provisions of the first sentence of sec. 93-2904 have been the law since 1867 (being sec. 20 of the Civil Practice Act of 1867) while the provisions of the second sentence of sec. 93-2904 have been the law since 1871 (being sec. 25 of the Codified Statutes of 1871.)

The early decisions of this court uniformly held that in actions upon contracts the exception provided in the second sentence of the statute, now sec. 93-2904, to the general rule provided in the first and main cause thereof, sec. 93-2904, applies only to actions upon express contracts, (Bond v. Hurd, 31 Mont. 314, 78 Pac. 579, 3 Ann. Cas. 566), wherein the contract sued upon discloses on its face that it was to be performed in a particular county other than that of defendant's residence, Yore v. Murphy, 10 Mont. 304, 25 Pac. 1039, 1040, and that "In all other cases" the proper place of trial of the action was regulated by the provisions of the first sentence of the statute, sec. 93-2904, enacting the general rule governing the place of trial which, in the first instance, provides that "the action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action".

In State ex rel. Coburn v. District Court, 41 Mont. 84, 108 Pac. 144, this court, without attempting to distinguish its former decisions and without even referring to any of them, departed from its former uniform holdings and held that the *performance exception* to the general rule applies to an action on a contract which failed to state or provide for any place where such contract was to be performed.

Later in State ex rel. Interstate Lumber Co. v. District Court, 54 Mont. 602, 172 Pac. 1030, the court further departed from its earlier construction of the general venue statute, sec. 93-2904, and expressly overruled the cases of Wallace v. Owsley, 11 Mont. 219, 27 Pac. 790, McDonnell v. Collins, 19 Mont. 372, 48 Pac. 549; Bond v. Hurd, 31 Mont. 314, 78 Pac. 579, 3 Ann. Cas. 566, as well as "all the decisions which are not in harmony with the conclusion herein expressed" and held that such former decisions "are based upon a misconception of the intention of the Legislature in formulating the statute." 54 Mont. at page 606, 172 Pac. at page 1032.

Thus confusion crept into the decisions until an alarming state of uncertainty has developed on the part of both bench

and bar as to what particular rule or statute regulates the venue in actions upon contracts.

We expressly disapprove of the above construction attempted to be given in State ex rel. Interstate Lumber Co. v. District Court, supra, to the provisions of the second or concluding sentence of section 6504, Revised Codes of 1907, now R. C. M. 1947, sec. 93-2904, and of the overruling of this court's decisions in: Wallace v. Owsley, 11 Mont. 219, 27 Pac. 790; McDonnell v. Collins, 19 Mont. 372, 48 Pac. 549 and Bond v. Hurd, 31 Mont. 314, 78 Pac. 579, 3 Ann. Cas. 566. See R. C. M. 1947, secs. 43-511, 12-202, 12-203, 19-102 and 93-401-15.

The plaintiffs were to perform "certain title obligations" which their complaint avers were to be "met by the plaintiffs" under the terms of their contract with defendants. Since all the lands mentioned in the contract are situated in Fergus County it is quite apparent that deeds of conveyance, satisfactions of mortgages and releases of liens as well as actions to quiet title, involving such lands, are required, by statute, to be filed in Fergus County. The trial court's order granting defendants' motion for change of place of trial of this action from Yellowstone County to Fergus County was proper and such order is affirmed. It is further ordered that the pleadings, papers, files and record in the case be transferred at once to the clerk of the district court of Fergus County to the end that defendants may there promptly apply for and obtain from the latter court such relief from, or in connection with, the issues and matters involved including relief from the attachment of their property, as the facts and law shall entitle them. Remittitur will issue forthwith and it is so ordered.

MR. JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

Here the written contract provided that the deed and other legal papers be held in escrow at the Security Trust & Savings Bank of Billings and that "payments will be made there."

It also provided that the vendor shall "deposit with the Security Trust & Savings Bank at Billings" a deed legally sufficient to vest title in the vendee.

Hence the contract by its terms was to be performed in Yellowstone County.

We have repeatedly held that even though the contract be silent as to place of performance it is properly triable in the county of the creditor's residence (here in Yellowstone County where plaintiffs reside) under the latter part of section 93-2904. Electrical Products Consolidated v. Goldstein, 97 Mont. 581, 36 Pac. (2d) 1033, and cases therein cited.

Certainly Yellowstone County is the proper county for the trial of the action where as here the contract by its express terms was performable in that county.

Defendants have not sustained the burden of showing that the contract sued on was not to be performed in Yellowstone County where the action was commenced. Johnson v. Ogle, 117 Mont. 419, 159 Pac. (2d) 337.

In no sense is this an action involving title or right of possession to real estate.

The complaint, while not a model for certainty, shows nevertheless that the action is to recover the alleged agreed purchase price of real estate.

Defendants seek to avoid the obligation to pay the purchase price because plaintiff is alleged not to have complied with his part of the agreement. The case of Heinecke v. Scott, 95 Mont. 200, 26 Pac. (2d) 167, relied on in the majority opinion is not comparable to this because the complaint in that action sought to remove a cloud on title and to enjoin defendants from asserting any claim in or title to certain described real estate and hence was clearly a case involving title to real estate.

One of the grounds of the motion for change of venue was that of the convenience of witnesses.

That question will not be considered until after an answer is filed and the case is at issue so that the court can determine whether certain witnesses are necessary and whether their tes-

timony will be material. Maio v. Greene, 114 Mont. 481, 137 Pac. (2d) 670, and cases therein cited.

It is true that the affidavit in support of the motion sets forth facts which it is fair to assume will be the basis of defendants' answer. But these fact allegations may be admitted in the reply or otherwise avoided and hence at this stage of the case the court is in no position to pass upon the question of the convenience of witnesses.

I think the order granting the change of venue should be reversed.

MR. JUSTICE ANDERSON: (dissenting).

I agree generally with what has been said by Mr. Justice Angstman but wish to make the further comment.

Since the opinion by this court in Hardenburgh v. Hardenburgh, 115 Mont. 469, 146 Pac. (2d) 151, the questions regarding venue have caused the practicing lawyer and the students of the subject considerable concern. See Montana Law Review, Vol. X, 1949, p. 83 et seq.

Nothing said in the majority opinion tends to reduce the confusion that exists on the subject. It merely disposes of the present controversy and in my judgment lends no help to the lawyer who may find himself confronted with questions of venue in the future.